**UNITED STATES of America et al.,**
**Appellants,**

**v.**

**Edmond MATRAS, Appellee.**

**No. 73–1108.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1973.

Decided Nov. 29, 1973.

Jane M. Edmisten, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellants.

Lyle E. Strom, Omaha, Neb., for appellee.

Before MATTHES, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

MATTHES, Senior Circuit Judge.

This is an appeal from an order of the district court denying a petition by the United States to secure enforcement of a summons issued by the Internal Revenue Service (IRS) under § 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. The summons, dated June 9, 1972, directed Edmond Matras, manager of the tax division of Northern Natural Gas Company, to appear before a designated IRS agent at a fixed time and place and produce all 1969 and 1970 company-wide budgets of Northern and its subsidiary and affiliated companies as an aid to the IRS routine biennial investigation of the company's consolidated income tax returns. Matras duly appeared before the agent but by letter "respectfully decline[d]" to produce the budgets on the ground "that the information requested * * * is neither relevant nor material to a determination of the tax liability of the companies or the correctness of any of their tax returns * * *."

Thereafter the IRS petitioned the United States District Court for the District of Nebraska under §§ 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. §§ 7402(b), 7604(a), for enforcement of the summons.[1]

Following a full hearing and submission of briefs, the district judge, in a memorandum opinion, found:

The budgets are only a projection of what the actual transactions would be. Once the transactions have occurred, it is the actual records of those transactions, not proposed budgets, that are relevant to a determination of the tax liability that flowed from the transactions. Moreover, the evidence indicates that the I.R.S. has been or will on request be furnished with the Work Order Budget Comparison ledger sheets, which compare the information in the budget with the actual transactions. The I.R.S. has failed to sustain its burden of showing relevancy and that it does not already have possession of the information as required by United States v. Powell [379 U.S. 48, 57–58 [85 S.Ct. 248, 13 L.Ed.2d 112] (1964)].

The government contends that 1) the district court applied a more restrictive standard of relevancy to the budgets

1. Sections 7402(b) and 7604(a) provide for enforcement of the summons in the district court for the district in which the person summoned resides or is found. Northern's principal office is located in Omaha, Nebraska.

than required by § 7602 and that 2) in any event the government sustained its burden of showing that the budgets might be relevant and that the information contained in the budgets was not already available to the IRS.

Section 7602 reads in pertinent part:

For the purpose of ascertaining the correctness of any return * * *, determining the liability of any person for any internal revenue tax * * *, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry * * *.

The government in disputing the district court's finding that the budgets were not in fact relevant argues that the court erroneously applied an absolute standard of relevancy as opposed to the statutory "may be relevant" standard. The argument is unrealistic. The district court, in its memorandum opinion, plainly sets forth the government's burden of proof for enforcement of a summons issued under § 7602, as defined by the United States Supreme Court in United States v. Powell, *supra*. That burden of proof included a showing that "the inquiry may be relevant to the purpose [of the investigation]." Confronted with materials that were, in his opinion, plainly irrelevant, the district judge implicitly found that the budgets lacked the potential relevancy required by the statute.

Whether the district court erred in so finding poses a harder question.

Alfred W. Peterson, Jr., Supervisory Internal Revenue Agent Case Manager, explained his reasons for wanting the budgets as follows:

My feeling * * * on the budget is that * * * it will give us a road map as to where we want to go. It's where all the department plans are brought into one department. That is, you are talking about 87 or 90 different plant operations bring[ing] their requests into one department, namely the Budget Department, where it would be made available for us and the taxpayer to determine what actually has gone on or what at least was planned for the year. Most of which is planned, I am sure, is accomplished.

Northern, on the other hand, asserts, and the district court agreed, that it is the records of the actual transactions, not proposed budgets, that are relevant to a determination of tax liability. All Northern records of actual transactions have been made available to the IRS. In fact, all information requested by the IRS has been furnished by Northern except for the subject budgets.[2]

---

2. Northern, according to its brief and oral argument, is contesting the potential relevancy of the budgets not merely on principle but also because of fears that the surrender of the budgets could lead to additional burdensome requests for useless information. The company-wide budgets contain total figures, and in order to break those figures down, it would be necessary to go behind the budget to the various departments or divisions and then further back to the origination of the various projects to develop all of the information that ultimately ends up in the budgets. This would result in the reconstruction of the information on projects that may have never been started. The taxpayer would, thus, be required to reconstruct a budget to find out information which, when found out, would be irrelevant to an I.R.S. audit since it would only reflect the taxpayer's hopes and expectations for projects which

■ The power of the IRS to investigate the records and affairs of taxpayers has long been characterized as an inquisitorial power, analogous to that of a grand jury, and one which should be liberally construed. United States v. Schwartz, 469 F.2d 977 (5th Cir. 1972); United States v. Widelski, 452 F.2d 1 (6th Cir. 1971), cert. denied, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); United States v. Giordano, 419 F.2d 564 (8th Cir. 1969), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970); United States v. McKay, 372 F.2d 174 (5th Cir. 1967); De-Masters v. Arend, 313 F.2d 79 (9th Cir. 1963); Brownson v. United States, 32 F.2d 844 (8th Cir. 1929).

On the other hand, § 7605(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 7605(b), prohibits "unnecessary examination or investigations * * *."

■ The United States Supreme Court has interpreted § 7605(b) and its companion statutes as requiring the IRS, in order to obtain judicial enforcement of an administrative summons, to show "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed * * *." Donaldson v. United States, 400 U.S. 517, 526, 91 S.Ct. 534, 540, 27 L.Ed.2d 580 (1971); United States v. Powell, *supra*.

The test of materiality and relevance under § 7602 has been defined by lower courts as whether the inspection sought might have thrown light upon the correctness of the taxpayer's returns. United States v. Egenberg, 443 F.2d 512, 513 (3d Cir. 1971); United States v. Shlom, 420 F.2d 263, 265 (2d Cir. 1969), cert. denied, 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); United

States v. Acker, 325 F.Supp. 857, 862 (S.D.N.Y.1971).

As posed by Chief Judge Lumbard in United States v. Harrington, 388 F.2d 520, 524 (2d Cir. 1968), "The question * * * is * * * whether the 'might' in the articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered."

In urging that the budgets may be relevant, the government relies heavily on United States v. Acker, *supra*, 325 F.Supp. 857, in which the IRS sought production of minutes of Standard Oil of New Jersey board meetings. Standard refused production of the minutes on the ground that many were irrelevant to the tax investigation. Instead Standard proposed to hand over what it deemed to be the relevant portions. In a thorough and well-written opinion, Judge Frankel ordered Standard to produce all the minutes so that the IRS agents could separate for themselves the relevant materials from the irrelevant. *Cf.* Beatty v. United States, 227 F.2d 350 (8th Cir. 1955). Interestingly, the supposed irrelevant minutes were those concerning proposed projects and contracts. *Acker*, of course, can be distinguished from the present case on the ground that Northern has never conceded the relevancy of any portion of its budgets.

■ As the court observed in the *Harrington* case, *supra*, the question whether materials sought by summons may be relevant does not always lend itself easily to solution. Based on the rationale of the authorities cited herein, we recognize that given the proper factual setting a court could find that budgets are potentially relevant to a tax investigation. Obviously, that issue must be determined on an ad hoc basis. Certainly, a taxpayer should not erect

---

were never implemented, for projects which may have been implemented in an entirely different form, and for projects which are already a matter of historical record.

We were informed by the government attorney at oral argument that the Northern tax investigation has been completed, subject to reopening upon receipt of the budgets.

roadblocks for the purpose of frustrating or preventing the IRS from a full-scale inquiry of the liability of the taxpayer. By the same token, the government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term "relevant" connotes and encompasses more than "convenience." Consequently, we are not persuaded to fault the district judge for concluding that the government failed to sustain its burden of proof by alleging a general need for a "road map." If we were to accede to the government's view, it is difficult to imagine corporate materials that might not contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation.

Deciding the case as we do, there is no need to consider whether the government sustained its burden of showing that the information contained in the budgets was not already available to the IRS.

Affirmed.