UNITED STATES of America and James Budde, Special Agent, Internal Revenue Service, Petitioners,

v.

**Charles H. BROWN, Respondent.**

**Civ. A. No. 5-71218.**

United States District Court,
E. D. Michigan, S. D.

Aug. 22, 1975.

Frederick S. Van Tiem, Detroit, Mich., Stephen G. Fuerth, Tax Div., Gen. Litigation Section, U. S. Dept. of Justice Washington, D. C., for petitioners.

Stanley R. Kirk, Hilda R. Gage, Detroit, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This is an action for judicial enforcement of an administrative summons issued by the Internal Revenue Service (IRS). Jurisdiction is proper under 26 U.S.C. §§ 7402(b), 7604(a). The pleadings, petitioner's affidavit, exhibits, and testimony adduced at the show cause hearing in this case disclose the following facts.

Petitioner James Budde, a special agent assigned to the Intelligence Division of IRS, has been conducting an investigation to determine respondent's correct income tax liability for the year 1972. After audit, Budde commenced this investigation upon information that the signature of respondent's former wife, Sharon Brown, which appeared on the joint return filed by respondent and his wife for 1972, was a forgery.

On September 27, 1974, Budde caused an administrative summons to be issued and served upon Sharon Brown directing her to testify with regard to the circumstances surrounding the filing of the 1972 return. Respondent filed suit against his former wife and the Internal. Revenue Service in this district and obtained from Judge Ralph Freeman an injunction prohibiting Sharon Brown from testifying in a manner which would violate the marital privilege.

On January 13, 1975, Budde served an administrative summons upon the respondent directing him to give handwriting exemplars and testimony relating to the preparation and execution of the 1972 tax return as well as a power of attorney issued to George Johnson & Company on June 21, 1974. On the extended return date of the summons, January 20, 1975, respondent appeared in answer to the summons but failed to comply with its terms. This enforcement suit followed.

The primary issue raised by the petition for enforcement is whether 26 U.S. C. § 7602 empowers IRS to compel the production of handwriting exemplars. Respondent asserts no Fifth Amendment privilege with respect to that aspect of the summons which directed him to testify on the preparation and execution of the 1972 return.

■■ Use of a summons to aid a tax investigation conducted under 26 U.S.C. § 7602 is proper if the summons is issued in good faith and prior to a recommendation for criminal prosecution. *Donaldson v. United States*, 400 U.S. 517, 535–36, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). Judicial enforcement of a summons is appropriate upon a showing that the investigation will be conducted pursuant to a legitimate purpose; that the inquiry may be relevant to the purpose, that the information sought is not within the possession of the Secretary, and that the Secretary or his delegate has determined the necessity of further examination and has notified the taxpayer in writing to that effect. *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

■ Section 7602 of Title 26 of the United States Code authorizes the Secretary or his delegate to summon a taxpayer or any other person to testify or to provide any books, papers, records, or other data which may be relevant or material to the tax investigation. Relevancy and materiality in this context are established when the information sought might illuminate the tax liabilities in

question. *See United States v. Matras,* 487 F.2d 1271, 1274 (8th Cir. 1973); *United States v. Egenberg,* 443 F.2d 512, 515 (3d Cir. 1971).

■ Respondent has not challenged the underlying legitimacy, necessity, notification, relevancy, or materiality of the summons issued him. Indeed, the record in this case establishes the presence of these elements in the investigation of respondent and in the issuance of the summons. Petitioners seek handwriting exemplars from respondent in order to test the authenticity of the signatures on the 1972 return of respondent and his former wife as a prelude to determining potential civil or criminal tax liabilities in connection with that return. Petitioners do not now possess exemplars suitable for this purpose.

■ Neither does respondent question that the instant summons to produce handwriting exemplars violates any proscription of the Fourth or Fifth Amendments. No Fourth Amendment expectation of privacy attaches to handwriting *per se. United States v. Mara,* 410 U.S. 19, 21, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Dionisio,* 410 U.S. 1, 14, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). IRS' summons power has been analogized to the subpoena power of the grand jury, *United States v. Bisceglia,* 420 U.S. 141, 147–48, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *United States v. Powell, supra,* 379 U.S. at 57, 85 S.Ct. 248, and a grand jury subpoena is not a seizure within the meaning of the Fourth Amendment. *United States v. Mara, supra,* 410 U.S. at 21, 93 S.Ct. 774; *United States v. Dionisio, supra,* 410 U.S. at 9–11, 93 S.Ct. 764. As an identifying physical characteristic, a handwriting exemplar, unlike testimonial communication, falls beyond the ambit of the Fifth Amendment privilege against self-incrimination. *Gilbert v. California,* 388 U.S. 263, 266, 87 S.Ct. 1951 (1967).

Respondent's challenge to the issuance of the summons in this case is premised upon the theory that section 7602 contains no provision authorizing the production of handwriting exemplars. In pertinent part, section 7602 sanctions use of a summons "to produce such books, papers, records, or other data" as may be relevant and material to an otherwise legitimate tax investigation. Respondent urges that a handwriting exemplar is not "other data" within the meaning of section 7602 and that the other categories of productible material exclude exemplars. Petitioners assert that the term "other data" includes handwriting exemplars.

The use of a section 7602 summons to compel production of handwriting exemplars in the context of a tax investigation has been addressed in only one reported case to date, *United States v. Campbell,* 390 F.Supp. 711 (D.S.D.1975). *Campbell* ordered production of exemplars pursuant to an administrative summons upon a finding that the summons violated neither the Fourth nor Fifth Amendments although IRS' power to issue such a summons under section 7602 went unquestioned.

The term "other data" is unique to section 7602 of the Internal Revenue Code of 1954. Predecessor statutes to section 7602 referred to the Commissioner's power to examine "any books, papers, records, or memoranda" in the course of a tax investigation. *See, e. g.,* Int.Rev.Code of 1939, ch. 34, § 3614, 53 Stat. 438; Act of Feb. 26, 1926, ch. 27, § 1104, 44 Stat. 113. The legislative history underlying section 7602 is inconclusive, both the House and Senate Committee reports declaring that: "This section contains no material change from existing law." H.Rep. No. 1337, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News, pp. 4017, 4584; S.Rep. No. 1622, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News pp. 4621, 5268.

■■ Despite an inconclusive legislative history, Congress' use of the broad, catch-all term "other data" in section 7602 suggests an intent to extend the summons power beyond the

gathering of the more conventional types of testimonial and documentary information specifically provided for in the statute. The plain meaning of the words "other data" is broad enough to encompass the power to compel production of other categories of constitutionally permissible information, in this case a handwriting exemplar.

■ This reading of the term "other data" in section 7602 is consistent with the thrust of the statute as a whole, a statute designed to facilitate inquiry into the correctness of returns and the existence of potential tax liabilities. The most recent interpretation of section 7602 suggests that the courts should recognize the rightful and broad role that a section 7602 summons plays in the enforcement of the tax laws:

"[O]ur tax structure is based on a system of self-reporting . . . [T]he Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability. Nonetheless, it would be naive to ignore the reality that some persons attempt to outwit the system, and tax evaders are not readily identifiable. Thus, § 7601 gives the Internal Revenue Service a broad mandate to investigate and audit 'persons who may be liable' for taxes and § 7602 provides the power to 'examine any books, papers, records, or other data which may be relevant . . . [and t]o summon . . . any person having possession . . . of books of account . . . relevant or material to such inquiry.' Of necessity, the investigative authority so provided is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax laws exists. *United States v. Powell*, 379 U.S. 48, [85 S.Ct. 248, 13 L.Ed.2d 112] (1964). The purpose of the statutes is not to accuse, but to inquire. Although such investigations unquestionably involve some invasion of privacy, they are essential to our self-reporting system, and the alternatives could well involve far less agreeable invasions of house, business, and records." *United States v. Bisceglia, supra,* at 145-6, 95 S.Ct. at 918.

Administrative excess in this regard is checked not by fettering the Secretary's inquisitorial power but by carefully examining the legitimacy and scope of a summons in the context of a judicial enforcement proceeding.

To restrict the reach of the term "other data" to documentary forms of information presently in existence and to exclude from its scope the giving of handwriting exemplars, as respondent suggests the court do, would frustrate an otherwise legitimate and lawful investigation conducted in conformance with the statute.

Analogies drawn by the Supreme Court between the summons power of IRS and the inquisitorial function of the grand jury buttress the foregoing view. *See United States v. Bisceglia, supra,* at 147-8, 95 S.Ct. 915; *United States v. Powell, supra,* at 57, 85 S.Ct. 248. Had respondent appeared in answer to a grand jury subpoena issued under similar circumstances, production of handwriting exemplars clearly could have been compelled. *See United States ·v. Mara, supra; United States v. Dionisio, supra.*

■ As a corollary to his argument that section 7602 does not authorize the taking of handwriting exemplars, respondent contends that the Internal Revenue Service Manual, popularly known as the Special Agents Handbook, is devoid of authorization for use of a section 7602 summons in seeking handwriting exemplars. Petitioners counter this contention with the assertion that the manual is not designed as a source of authority for the performance of official acts. The court agrees. The manual is a teaching tool for agents, not a series of regulations duly promulgated by the Secretary and intended to have the force and effect of law. The manual need provide no authority for use of a sum-

mons to obtain handwriting exemplars. Authority for issuance of the summons in question derives, as it should, from section 7602.

For the foregoing reasons, the court holds that section 7602 empowers IRS to compel respondent's production of handwriting exemplars. The petition for enforcement of the administrative subpoena is granted, and respondent is directed to appear before petitioners at a reasonable time and place to furnish exemplars sufficient to test the authenticity of the signatures on respondent's 1972 tax return.

So ordered.