UNITED STATES of America and Simon Levin, Special Agent of the Internal Revenue Service, Petitioners-Appellees,

v.

INTERSTATE TOOL AND ENGINEERING CORPORATION et al., Respondents-Appellants.

No. 75–1322.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1975.

Decided Dec. 2, 1975.

John M. Byers and William B. Graves, Milwaukee, Wis., for respondents-appellants.

Scott P. Crampton, Asst. Atty. Gen., William A. Whitledge, Atty., Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.

Before HASTINGS, Senior Circuit Judge, SWYGERT, Circuit Judge, and PERRY, Senior District Judge.*

HASTINGS, Senior Circuit Judge.

This is an appeal by a small closely held Wisconsin corporation, Interstate Tool and Engineering Corporation (taxpayer), Gordon V. Kottke, taxpayer's corporate president, and Carl S. Zetley, a certified public accountant employed by taxpayer, from an order of the district court[1] enforcing two Internal Revenue Service summonses and from orders quashing discovery and trial subpoenas.

At the outset it becomes quite clear that there are irreconcilable disputes between the parties concerning the factual background of this matter as well as a number of procedural matters. After our review of the record as a whole and the district court's several memorandum opinions and orders, we are convinced that the following narrative is a fair statement of what has taken place.

Sometime in 1972, Revenue Agent Gerald J. Bell was assigned to make a field audit of taxpayer for the fiscal year ended November 30, 1971. In October 1972 Agent Bell requested an appointment with taxpayer and was referred to Mr. Zetley of taxpayer's accounting firm. Agent Bell began examining such of taxpayer's records and books as were made available to him in Zetley's office. Subsequently, Agent Bell requested additional documents from Zetley, only a part of which were furnished.

In January 1973 Agent Bell expanded his audit to include taxpayer's 1970 and 1972 fiscal years, and the 1970, 1971 and 1972 personal income tax returns of two corporate officers.

On March 9, 1973, Agent Bell met with Zetley to request further information. The two had a conversation. Bell gave Zetley certain tentative figures approximating at least some portion of taxpayer's excess tax liability. Zetley attempted to characterize the meeting as a final closing. Bell, however, testified that the figures he presented were only tentative ones, that the purpose of the meeting was to request Zetley to make available further information and that he was not prepared to, and did not, present a closed case at that time. We credit Bell as to his version of the conversation, as did the district court.

On March 14 and 20 Bell requested and received additional information from

---

* Senior United States District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

1. United States District Court for the Eastern District of Wisconsin, the Honorable Robert W. Warren, Judge, presiding.

Zetley. Bell also indicated to Zetley that he was still not satisfied and was going to contact third parties concerning the tax liability of taxpayer. On April 5, 1973, Bell received a telephone call from John Byers, an attorney representing taxpayer, who advised him that all of the books and records involved were in his office and could be examined there.

Bell did not go to Byers' office, but shortly thereafter he referred the case to the IRS Intelligence Division. Bell testified that subsequent to March 9, 1973, information he had received from third party sources indicated that taxpayer had taken fraudulent deductions in 1970 and 1971. The case was assigned to Special Agent Simon Levin for investigation on April 19, 1973. Levin stated that he could not begin work until the last of June because he was closing another case.

Special Agent Levin issued the summonses in question for taxpayer's books and records and for Zetley's work papers for the years involved to determine the correct potential civil tax liability. At least a portion of these records had been provided earlier for Agent Bell's inspection. On the return dates of the respective summonses, taxpayer, through Kottke and Zetley, appeared. Kottke refused to testify or produce records. Zetley refused to testify but did tender some records to Special Agent Levin.

On March 26, 1974, the Government and Levin instituted the instant enforcement proceedings in the district court. On April 17, 1974, taxpayer filed a motion for production of documents contained in Government files. The Government thereupon filed a motion to quash. Briefs and oral argument were received by the district court on the two motions. On February 14, 1975, the trial court granted the Government's motion to quash, and, in its memorandum opinion, limited discovery to whatever could be obtained during the adversary hearing to be held later.

The adversary hearing was conducted by the trial court on March 7 and 13, 1975. At this hearing the trial court permitted taxpayer to conduct cross-examination of witnesses in the nature of discovery and required the Government to produce in open court some, but not all, of the documents requested by taxpayer. At the beginning of the second day of the adversary hearing, the trial court advised the parties on both sides that it intended to complete and conclude the hearing by the end of the day. As a matter of fact, the hearing extended to and was ended at 10:00 p. m.

On March 25, 1975, the trial court entered its order of enforcement of the IRS summonses in question and further orders quashing taxpayer's discovery and trial subpoenas. This appeal followed. We affirm.

Taxpayer substantially raises four issues on this appeal, *viz.:*

(1) Whether the IRS summonses requesting re-examination of taxpayer's books and records constitute a second "inspection" within the meaning of Section 7605(b) of the Internal Revenue Code of 1954, and are thus unenforceable due to the failure to provide the Secretary's written notice of a new inspection;

(2) Whether the trial court abused its discretion by refusing to order discovery of Government files prior to the adversary hearing and by limiting the taxpayer's access to Government files at the hearing;

(3) Whether the trial court prejudicially abused its discretion by prematurely terminating the adversary hearing; and

(4) Whether that portion of the summonses requiring production of a 1972 journal not used in the preparation of taxpayer's return is unenforceable as outside the permissible scope of the investigatory powers of the IRS.

I.

■ Section 7605(b) of the Internal Revenue Code of 1954 provides:

§ 7605. Time and place of examination

\*     \*     \*     \*     \*     \*

(b) Restrictions on examination of taxpayer.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

Taxpayer asserts that Agent Bell had already completed one inspection of its books and records and that a second inspection by Special Agent Levin could be had only on prior written notification by the Secretary or his delegate. In this case, after the adversary hearing by the trial court, the court made findings that the inspection requested in the instant summonses was part of an ongoing investigation, that it had not been completed by Agent Bell when it was transferred to Special Agent Levin, and that it was relevant to a proper IRS investigation and had not yet been obtained by petitioner. Based upon our own independent reading of the record as a whole as well as upon the findings of the trial court, we agree.

This holding is consistent with our prior holding in *United States v. Kendrick*, 7 Cir., 518 F.2d 842, 848–850 (1975), *cert. denied*, —— .U.S. ——, 96 S.Ct. 449, 46 L.Ed.2d 387. Therein, we chose to follow the Fifth Circuit's decision in *United States v. Schwartz*, 5 Cir., 469 F.2d 977, 983–985 (1972). Our holding in *Kendrick* and here contradicts taxpayer's theory of the law.[2]

The trial court did not err in finding and holding that the instant summonses were part of an ongoing investigation and that the material was in all things properly requested. Taxpayer is not entitled to the relief sought pursuant to § 7605(b) of the Internal Revenue Code of 1954.

## II.

■■ The Federal Rules of Civil Procedure are applicable to a summons enforcement proceeding and may be limited or suspended by a federal district court in the interest of obtaining an expedited disposition of the summons proceeding. Rule 81(a)(3), 28 U.S.C.; 7 J. Moore, Federal Practice ¶ 81.01(6) at 81–16 (2d ed. 1974). Our function as a reviewing court is to determine only whether the trial court has abused its discretion. *United States v. Turner*, 7 Cir., 480 F.2d 272, 275 (1973); *United States v. National State Bank*, 7 Cir., 454 F.2d 1249, 1252 (1972); *United States v. Bell*, 9 Cir., 448 F.2d 40, 42 (1971).

We have held that a district court did not abuse its discretion by refusing to order discovery prior to the hearing in the Government's petition for enforcement when the taxpayer sought to establish its defense that the summons had issued for an improper purpose. *Turner, supra*, 480 F.2d at 275–6, citing *Couch v. United States*, 409 U.S. 322, 326, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), *Donaldson v. United States*, 400 U.S. 517, 532–3, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); and *United States v. Moriarty*, 7 Cir., 435 F.2d 347, 349 (1970). *Accord, United States v. Salter*, 1 Cir., 432 F.2d 697, 700 (1970); *Bell, supra*, 448 F.2d at 42.

■ We agree with the finding of the trial court that there is nothing extraordinary in the defenses offered by the taxpayer in the circumstances found present here that requires the court to depart from the procedure generally followed and approved for limiting discovery in most enforcement proceedings.

The record belies taxpayer's contention that it was unduly limited in its discovery at the hearing. In the course of many hours of testimony, taxpayer was allowed to extensively cross-examine the revenue agent and put into evidence most of the documents it sought to ob-

---

2. *See also United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), and its companion case *Ryan v. United States*, 379 U.S. 61, 85 S.Ct. 232, 13 L.Ed.2d 122 (1964),

cited by the Court in *Donaldson v. United States*, 400 U.S. 517, 526–27, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

tain by pretrial discovery, some forty exhibits in all. The trial court permitted and recognized that taxpayer was using this procedure as discovery. There was no prejudice to taxpayer in this procedure.

Accordingly, we find and hold that the district court did not abuse its discretion by refusing to order discovery of Government files prior to the adversary hearing and by limiting taxpayer's access to Government files at the hearing.

### III.

It borders on the frivolous to charge that the trial court prejudicially abused its discretion by prematurely terminating the adversary hearing. Taxpayer was twice warned of the court's intention to expedite the hearing. One month before the hearing, the court read to counsel a memorandum addressed to the procedure to be followed and the discovery it would allow. One week before the final day of the hearing (about which taxpayer complains), the court made clear its position. Taxpayer continued to insist upon full discovery. Even though much of the evidence sought to be adduced by taxpayer was irrelevant under the rulings laid down by the court, the court permitted the hearing to proceed well into the night before calling a halt.

In our considered judgment, there is no merit in taxpayer's charge of error in the termination of the proceeding. No useful purpose could have been served by its further prolongation.

### IV.

Finally, taxpayer contends that requiring the production of a 1972 journal not used in the preparation of its tax return is outside the permissible scope of the agency's investigatory powers. This contention is urged in reliance upon United States v. Matras, 8 Cir., 487 F.2d 1271 (1973). Taxpayer also asserts that a revised journal and worksheets, prepared before the issuance of the summons and at the direction of taxpayer's counsel, which were used in the preparation of its 1972 return were turned over pursuant to the summons. As a result, taxpayer argues that the Government was without statutory authority to require production of the earlier journal.

In Matras the court refused to order production of budgetary figures on the ground that they were not relevant to the determination of tax liability. However, the court distinguished that situation from one where records of actual transactions are at issue and are relevant. 487 F.2d at 1273. In the case at bar, the Government is seeking records of actual transactions. Without dispute, the subject journal is a business record. As such, under Int.Rev.Code of 1954, § 7602, it is producible, being relevant and material to such inquiry. It becomes such in any event because of its relevance to a determination of the civil fraud penalties for the two earlier years in issue.

This precise question was raised by taxpayer in advance of the evidentiary hearing. In order to clarify the matter, the trial court requested the parties to file memorandums of authorities supporting their respective positions. This was done. These were considered by the trial court, and we have made an independent examination of them. We agree with the final disposition of the matter made by the trial court in its memorandum final order of March 25, 1975, wherein the court ruled: "The Court Finds that respondents' [taxpayers'] contentions regarding a certain check disbursements journal for the fiscal year ending November 30, 1972 are without merit; the motion for a protective order to prohibit the disclosure of said journal is hereby DENIED."

It becomes quite clear to us that this instant proceeding is but the beginning of a proper IRS investigative matter. No final disposition of any of the pertinent questions has been made. Such matters will necessarily await the subsequent findings and decisions of the investigative agency. This investigation

should be permitted to move forward in due course.

For all of the reasons hereinabove set out, the order of the district court herein appealed from should be and now is affirmed.

Affirmed.