**In re GRAND JURY SUBPOENAS DUCES TECUM INVOLVING CHARLES RICE and others.**

Misc. No. 3–79–20.

United States District Court,
D. Minnesota,
Third Division.

Dec. 27, 1979.

See also, D.C., 483 F.Supp. 1091.

Boris Kostelanetz, Lawrence S. Feld, and Stuart Abrams, Kostelanetz & Ritholz, New York City, for Charles Rice and Cargill, Inc.; Dorsey, Windhorst, Hannaford, Whitney & Halladay, Minneapolis, Minn., of counsel.

Jeffrey R. Brooke, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., for Kenneth J. Andersen, Harold Bonnell and Peat, Marwick, Mitchell & Co.; Howard Krongard, Assoc. Gen. Counsel, Peat, Marwick, Mitchell & Co., New York City, of counsel.

Daniel W. Schermer, Asst. U. S. Atty., Minneapolis, Minn., for the United States of America.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

The above-entitled matter comes before the Court upon motions to quash certain grand jury subpoenas duces tecum. The subpoenas require the production of documents from Cargill, Inc., Charles Rice, Assistant Vice President of Cargill, Peat, Marwick, Mitchell & Co. (hereinafter "PMM") and two PMM partners, Kenneth J. Andersen and Harold Bonnell.

The subpoenas arise out of a special grand jury investigation into the activities of two of Cargill's subsidiary companies: Compania Industria Y De Abastecimientos S.A. (hereinafter "Cindasa") and Piensos Hens, S.A. (hereinafter "PH"). A detailed summary of the events leading to the grand jury investigation may be found in the opinion issued today in *United States v. Bonnell*, 483 F.Supp. 1070 (1979). A brief statement of the factual background will suffice.

In 1977 a Minneapolis trial attorney met with PMM employees and a Cargill attorney to discuss certain activities of Cargill's foreign subsidiaries. Following the meetings, the attorney summarized his notes (producing the so-called "questioned document") and sent the document to Cargill's general counsel. The document was later forwarded to Cargill's New York tax counsel. A messenger for a temporary employment agency hired by the law firm opened the envelope containing the questioned document and photocopied it before delivering it to Cargill's general counsel.

The messenger proceeded to deliver copies of the document to a local newspaper and the Internal Revenue Service. The IRS issued summonses based on the questioned document to Cargill, PMM, and their employees on May 19 and 26, 1977. The IRS later petitioned this Court to enforce the summonses. While the enforceability of the summonses was being litigated, a special grand jury was convened to investigate possible criminal tax liabilities. The subpoenas at issue were drafted on the basis of the questioned document and were served on August 28, 1979. Cargill, Charles Rice, PMM, Harold Bonnell, and Kenneth Andersen (hereinafter "movants") have moved on a number of grounds that this Court quash the subpoenas.

*Fruits of a poisonous tree*

Movants renew the primary argument that they made against enforcement of the IRS summonses: that the questioned document is tainted, making the subpoenas, which are based on the document, fruits of a poisonous tree. The questioned document is purportedly poisoned because it is a privileged attorney-client communication and is work product.[1]

---

1. Movants have also alleged that the government has transgressed Cargill's right to counsel in grand jury proceedings by using the questioned document. As will be seen, the questioned document is work product, but is not a privileged attorney-client communication. A grand jury's consideration of the fruits of work product hardly rises to the level of a Sixth Amendment violation. Neither has the Fifth Amendment been violated. Obtaining the

This Court has already carefully considered the questioned document and the circumstances surrounding its acquisition and has concluded that the document is not a privileged attorney-client communication. *See United States v. Bonnell, supra.* The document is, however, opinion work product. Were the questioned document itself subpoenaed by the grand jury, this Court would conclude that it need not be produced. *See In re Grand Jury Proceedings* (hereinafter *"Duffy"*), 473 F.2d 840 (8th Cir. 1973).

The issue then is whether work product may be used as the basis for subpoenas requiring production of materials mentioned in the questioned document. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), is controlling authority on the issue.

In *Calandra* a grand jury subpoenaed the respondent to answer questions that would not have been asked but for an illegal search of respondent's place of business resulting in the seizure of incriminating records. Calandra moved to suppress the grand jury's inquiries on the ground that the queries were based on illegally obtained evidence. The Supreme Court refused to apply the Fourth Amendment exclusionary rule in the grand jury context and held that Calandra was required to answer the inquiries which were based on the product of an unconstitutional search.

■ The opinion of the Court carefully surveyed the history and functions of the grand jury, stating that "[t]raditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law." 414 U.S. at 343, 94 S.Ct. at 617. Also noted were decisions that have declined to dismiss indictments issued on the basis of incompetent evidence. 414 U.S. at 344–45, 94 S.Ct. 613. *See, e. g., Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment based on hearsay evidence is valid); *United States v. Blue*, 384 U.S. 251, 255 n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (indictment based on evidence obtained in violation of witness' right not to incriminate himself would be valid). Any challenges to the power of grand juries to consider any and all information must be looked upon with suspicion:

> Permitting witnesses to invoke the exclusionary rule before a grand jury would precipitate adjudication of issues hitherto reserved for the trial on the merits and would delay and disrupt grand jury proceedings. Suppression hearings would halt the orderly progress of an investigation and might necessitate extended litigation of issues only tangentially related to the grand jury's primary objective. The probable result would be "protracted interruption of grand jury proceedings," *Gelbard v. United States*, 408 U.S. 41, 70, 92 S.Ct. 2357, 2372, 33 L.Ed.2d 179 (1972) (White, J., concurring), effectively transforming them into preliminary trials on the merits. In some cases the delay might be fatal to the enforcement of the criminal law.

414 U.S. at 349–50, 94 S.Ct. at 620.

The *Calandra* court refused to inject the Fourth Amendment exclusionary rule into grand jury proceedings on the ground that the rule would not deter official misconduct. In this case, creation of a work product exclusionary rule would not advance the purposes of the work product doctrine. Lawyers ordinarily have successfully sheltered their communications from both private and governmental scrutiny. Quashing the subpoenas would neither significantly deter private informants from obtaining such materials nor provide an additional incentive to attorneys to record their impressions and trial strategies. But even if the policies of the work product doctrine were furthered by suppression, this Court would find it anomalous to hold that a grand jury may not consider the fruits of work product but may consider the fruits of evidence obtained in violation of the Fourth Amendment. Such a holding would en-

fruits of work product does not shock the conscience, *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), or violate

tenets of fundamental fairness, in light of the fact that the government played no role in the initial acquisition of the document.

sconce a judicially created doctrine, *see Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), on a higher plane than privacy guaranteed by the Constitution. *Securities and Exchange Commission v. OKC Corp.*, 474 F.Supp. 1031, 1040 (N.D. Tex.1979).

■ Movants point to the statement in *Calandra* that a grand jury "may not itself violate a valid privilege, whether established by the Constitution, statute, or the common law." 414 U.S. at 346, 94 S.Ct. at 619. It is true, for example, that a grand jury may not force a witness to answer questions or produce documents that reveal attorney-client communications, *In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 868 (D.Minn.1979), or are opinion work product, *Duffy, supra*. But once the grand jury has access to evidence, whether or not it be admissible at trial, consideration of that evidence and, presumably, the fruits therefrom, is permissible, even if the resulting indictment is based entirely upon such evidence. *United States v. Calandra*, 414 U.S. at 346, 94 S.Ct. 613; *In re Weiss*, 596 F.2d 1185, 1186 (4th Cir. 1979).

■ Therefore, because the grand jury would not violate a valid privilege by considering the non-privileged fruit of work product, Cargill's motion to quash the subpoenas on the ground that they are based on the questioned document must be denied. This Court's holding does not mean that Cargill or individual defendants may not assert at a trial that the evidence was illegally obtained. *In re Grand Jury Investigation of Violations*, 318 F.2d 533, 535 (2d Cir. 1963) (Friendly, J.); *cf. United States v. Minnesota Mining and Manufacturing Company*, CIVIL 3–79–3 (D.Minn. March 26, 1979) (Alsop, J.).

*Tax pool and tax contingency analyses*

Movants urge that subpoenaed tax pool and tax contingency analyses are not relevant to the grand jury's investigation. The analyses apparently were not used in preparing Cargill's tax returns. The government responds that the materials may show that Cargill officials were aware of underreporting by Cindasa and PH and may have set up reserves and/or established contingent liabilities to cover additional tax liabilities, should the underpayments ever come to light. The government further states that the files may show knowledge on the part of specific Cargill officials that income was under-reported and taxes underpaid.

This Court recognizes that the two circuits that have discussed tax pool and tax contingency analyses have arrived at different results. In *United States v. Coopers & Lybrand*, 550 F.2d 615, 621 (10th Cir. 1977), the Tenth Circuit found that the probative value of the subpoenaed documents was minimal. In contrast, *United States v. Noall*, 587 F.2d 123 (2d Cir. 1978) (Friendly, J.), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979), enforced an IRS summons for internal audit reports not used to prepare tax returns. *Noall* determined that the fact that audit reports had not been used to prepare tax returns did not mean that the papers were irrelevant to the IRS investigation. 587 F.2d at 126–27.

■ This Court believes that *Noall*'s approach is the preferable one. Grand juries must be accorded a wide latitude in their investigations.

> [A] grand jury has a right . . . to a fair margin of reach and material in seeking information, not merely direct but also as a matter of possible light on seemingly related aspects whose significance it is seeking to uncover. Some exploration or fishing necessarily is inherent and entitled to exist in all documentary productions sought by a grand jury.

*Universal Manufacturing Co. v. United States*, 508 F.2d 684, 686 (8th Cir. 1975), quoting *Schwimmer v. United States*, 232 F.2d 855, 862–63 (8th Cir.), *cert. denied*, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52 (1956).

Cargill's tax pool and tax contingency analyses may indeed shed light on the question of criminal intent.[2] Whether PMM's

---

**2.** Movants cite *United States v. Matras*, 487 F.2d 1271 (8th Cir. 1973), as authority for the proposition that the tax analyses are not relevant. In *Matras*, the IRS sought production of

audit papers must also be produced is a closer question. A more stringent standard of relevancy is often required when subpoenas are directed at third parties. *See, e. g., United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968) (Lumbard, J.); *United States v. Coopers & Lybrand, supra.*

■ This Court is convinced that the tax pool and tax contingency analyses are sufficiently relevant to justify the production of a third party's documents. PMM, like all other United States citizens or corporations, has a strong obligation to furnish all relevant evidence to a grand jury, *Branzburg v. Hayes*, 408 U.S. 655, 682, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

### Reasonableness of subpoenas

Movants initially argued that the subpoenas were overly broad and burdensome, making them unreasonable searches and seizures in violation of the Fourth Amendment. At oral argument on October 31, 1979, this Court indicated that it agreed with movants' position, and suggested that movants and the government discuss alternatives that would narrow the scope of the subpoenas. Such negotiations have occurred. The government, with the cooperation of counsel for Cargill and Rice, has more carefully focused the subpoenas directed to Cargill and Charles Rice. Cargill and Rice have now waived their argument that the subpoenas, as originally drafted, are unduly broad and burdensome.

Areas of disagreement remain with respect to the breadth of the subpoenas directed to PMM, Andersen, and Bonnell. A decision regarding the reasonableness of those subpoenas and who should bear the cost of compliance will be made at some future date.

corporate budgets for use as a "road map" to other documents it had obtained from a corporation. The "map" itself, however, was not even potentially relevant to the central question, which was whether the taxpayer had understated income. In this case, the tax analyses may shed light on intent. Indeed, the *Matras* case recognized that the IRS' investigatory power should be "liberally construed." 487 F.2d at 1274.

### Spanish documents

Cargill and PMM submit that the subpoenas calling for the production of documents in Spain must be quashed because the records are not within the custody and control of Cargill and PMM and because production of the records may violate Spanish law. On December 18, 1979, this Court ordered that an evidentiary hearing be held before Magistrate J. Earl Cudd on these issues. Pending the hearing and the Magistrate's issuance of his report and recommendation, this Court will forego ruling on this aspect of the motions to quash.

### Grand juries and administrative investigations

Cargill insists that in this case the grand jury is being used to conduct an administrative investigation.[3] However, concurrent IRS and grand jury investigations in this case are proper. *In re Grand Jury Subpoenas, April 1978, at Baltimore* (hereinafter "*Baltimore*"), 581 F.2d 1103 (4th Cir. 1978), *cert. denied sub nom. Fairchild Industries, Inc. v. Harvey*, 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979), dealt with a similar situation. A taxpayer successfully resisted enforcement of IRS summonses. A grand jury then subpoenaed the same materials and the district court denied motions to quash. The case reached the Fourth Circuit on a petition for a writ of mandamus. The taxpayer charged, as does Cargill, "that the government was improperly using the broad powers of the grand jury to obtain documents and records, otherwise unobtainable through the administrative process, desired by the IRS for civil purposes and its administrative criminal investigation." 581 F.2d at 1106.

The Fourth Circuit rejected the taxpayer's contention, citing an affidavit by the Department of Justice attorney attesting to

**3.** The force of this contention is diminished by this Court's decision to enforce IRS summonses demanding the production of some of the same documents subpoenaed. *United States v. Bonnell*, 483 F.Supp. 1070 (D.Minn.1979).

the government's good faith in utilizing the grand jury. On October 26, 1979, the Assistant United States Attorney in charge of the grand jury investigation submitted a similar affidavit stating that the special grand jury investigating possible Cargill tax violations was in operation solely for criminal purposes. *See In re Kadish*, 377 F.Supp. 951, 952 (N.D.Ill.1974) (affidavit from U.S. attorney sufficient to establish good faith).

■ The *Baltimore* court also relied on the provisions of Federal Rule of Criminal Procedure 6(e), which establishes procedures for granting administrative agencies access to grand jury materials. *In re December 1974 Term Grand Jury Investigation*, 449 F.Supp. 743, 751 (D.Md.1978), describes criteria for the release of grand jury materials to the IRS. The materials must be relevant (related to a civil proceeding) and the government must satisfy the court that the grand jury is not being used as a subterfuge for the purpose of obtaining evidence for civil proceedings. If the IRS desires access to the subpoenaed materials, it must comply with Rule 6(e), and any contention that the grand jury is conducting an administrative investigation may be considered at a Rule 6(e) proceeding.

■ Movants also allege that the grand jury investigation was begun in defiance of the Internal Revenue Manual, which states that the grand jury should be used only if "it is apparent that the administrative process cannot develop the relevant facts within a reasonable period of time . . . ." Internal Revenue Manual § 9267.2. Even presuming that the investigation is contrary to the Manual's admonition, movants may derive no advantage from the breach of regulations. *Baltimore* disposed of an identical argument; movants have "no entitlement to have any particular internal policy followed with regard to the decision to institute a grand jury investigation." 581 F.2d at 1108 n. 11. *See also In re Berkovitz*, 367 F.Supp. 1058 (E.D.Pa.1973).

*Other issues*

■ PMM submits that the subpoenas are unreasonable and oppressive in that they call for the production of documents which are confidential and proprietary. This objection has no validity in light of the fact that grand jury proceedings are secret. *Application of Radio Corp. of America*, 13 F.R.D. 167, 172 (S.D.N.Y.1952). To the extent that the objection contends that accounting documents are per se privileged, the contention has been rejected by the Supreme Court. *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

Cargill states that some of the documents called for in the subpoenas are privileged attorney-client communications or are work product. This Court will not rule on such claims at this time. Cargill may assert such claims of privilege at the time it is required to produce the documents pursuant to the subpoenas. Magistrate J. Earl Cudd will then conduct an *in camera* review of the individual documents Cargill claims are privileged.

*Order*

Movants' motions regarding documents located in Spain are reserved for future determination. The motions of PMM, Andersen, and Bonnell regarding the reasonableness of the subpoenas and the costs of compliance are similarly reserved. The claim of Cargill and Rice that particular documents subpoenaed are privileged attorney-client communications or are work product may be asserted when the grand jury requires production of those documents.

In all other respects, IT IS ORDERED that the motions of Cargill, Rice, PMM, Andersen, and Bonnell to quash be and hereby are denied.