**In re Grand Jury Subpoena Gabriel H. BERKOVITZ—a Witness, and Henry R. Sklar—Movant.**

**Misc. No. 73–159.**

United States District Court, E. D. Pennsylvania.

Dec. 14, 1973.

Jerome Robert Richter, Philadelphia, Pa., for movant.

John F. Penrose, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## MEMORANDUM

GORBEY, District Judge.

Before the court is a motion by Henry R. Sklar to quash the Grand Jury subpoena issued to obtain the testimony of his accountant, Gabriel H. Berkovitz, and to suppress the evidence obtained by a prior subpoena which compelled Mr. Berkovitz to produce all papers, documents and files relating to the financial affairs of Henry R. Sklar, as to the years 1970 through 1973. The primary ground upon which movant bases his claim for relief is that the United States has not complied with certain internal procedures, allegedly required before this matter could be brought before the Grand Jury.

On October 10, 1973, this court held a hearing on this motion. The facts of the case, as we find them to be, are as follows: On July 24, 1973, a special agent for the Internal Revenue Service served a Grand Jury subpoena on petitioner's accountant, calling for the production of all records pertaining to the financial affairs of movant for the years 1970 through 1973. In response to this subpoena, the movant filed on the morning of July 30th, a motion to quash the subpoena. The basis of that motion, as set out in paragraph 3 therein, was that both Internal Revenue and the United States Attorney's Office were prohibited from utilizing the assistance of the Grand Jury, unless certain approvals from Internal Revenue and the Department of Justice, Tax Division, Washington, D. C., had first been obtained.

A two day hearing was held before Judge Clifford Scott Green, sitting as emergency judge. At the end of that hearing, Judge Green, in refusing to quash the subpoena, made findings of fact (n. t., August 2, 1973, pp. 224–226) and the following conclusions of law (n. t., August 2, 1973, p. 226):

The court concludes, as a matter of law, that in regard to the investigation described in the Findings of Fact, that the government agencies involved, were not required to follow any procedure concerning prior approvals, as outlined in paragraph A of the motion and, therefore, the procedure followed is proper and lawful.

Accordingly, the court concludes that, as a matter of law, the movant has not been the victim of the failure to follow any official policies, directives or regulations, which would constitute a discriminatory denial of the regular, impartial administration of the Internal Revenue Code; nor has movant in any manner, been denied due process of law, as guaranteed by the Fifth Amendment of the United States Constitution, as alleged in paragraph 3–D of the motion to quash the subpoena. And the court further finds that movant has not been denied any rights

which he may have in regard to this matter.

A second Grand Jury subpoena was issued and served upon Gabriel H. Berkovitz, returnable on October 15, 1973. The government has agreed to a stay of this subpoena, pending disposition of movant's motion by this court. The grounds which movant puts forth in support of this second motion are almost identical to those put forth before Judge Green. Movant claims that the present situation differs from that before Judge Green because of certain intervening facts, which were put on the record at the hearing conducted by this court on October 10, 1973.

This new information is as follows:

Beginning in September, 1973, a series of letters were exchanged between counsel for the movant and the Assistant United States Attorney. The essence of these letters was that since Mr. Sklar had not filed a power of attorney with the Internal Revenue Service, Special Agent Alan Feldman [1] was prohibited by IRS regulations from dealing with anyone but the taxpayer, directly. This resulted in a letter dated September 21, 1973 from John F. Penrose, Assistant U. S. Attorney, to Jerome R. Richter, Esquire, concerning Mr. Sklar. In that letter, Mr. Penrose stated that unless a proper power of attorney is filed, the special agent on the case would continue to contact Mr. Sklar directly. In response to that letter, Jerome R. Richter, Esquire, sent a letter to Special Agent Feldman on October 5, 1973, attaching to that letter the required power of attorney. However, this letter stated that

such power of attorney was being filed under protest, simply to prevent Special Agent Feldman from contacting Mr. Sklar directly. The movant urges that the letter of September 21, 1973 "clearly establishes that this investigation is, and has been, at all relevant times, a tax investigation in which the authority in process of the Grand Jury has been unlawfully utilized contrary to the previous stated position of the United States Attorney." (movant's supplemental memorandum of law, p. 2). Movant urges that this new evidence changes the posture of the case from that which was before Judge Green. We cannot agree. The motion put forth to quash this second subpoena is almost identical to the one with which Judge Green dealt. The memorandum in support of that motion makes the same arguments and cites the same law which was put forth to Judge Green. We feel that while this new material may serve to clarify the situation, it does not change it.

Movant's primary attack rests on an allegation that prior to the issuance of this subpoena, the government has not followed certain procedures and received certain approvals, required by the Rules and Regulations (formal and informal) of the Internal Revenue Service and the Department of Justice.

The first procedures that allegedly were not followed are those used in what is commonly described as the "reluctant witness situation." [2] While we feel that the validity of these procedures is highly suspect, we agree with the government's position that this is not the situation presently before the court. In this mat-

1. Agent Feldman is on special assignment to the U.S. Attorney's office to assist the Grand Jury in its investigation of the Small Business Administration.

2. These procedures deal with a situation, where in an investigation, being conducted by the Internal Revenue Service, a witness is encountered, who will not provide the information requested. Generally, this witness is a person such as a taxpayer's accountant, who will not provide his work papers, which were used in the preparation of the taxpayer's

income tax return. After obtaining certain approvals, the Internal Revenue Service, through the local United States Attorney's office, causes a subpoena to be issued to this witness, commanding him to appear before the Grand Jury, for purposes of obtaining the information which the Internal Revenue Service had been unable to obtain. The important element in this procedure is that the testimony this witness gives before the Grand Jury, is totally unrelated to any investigation currently being conducted by the Grand Jury.

ter, there is an ongoing investigation presently being conducted by the Grand Jury into irregularities relating to the Small Business Administration, including possible tax offenses. Mr. Sklar has become a target of this investigation. Thus, the "reluctant witness situation" is not before us since there is an ongoing investigation being conducted by the Grand Jury concerning Mr. Sklar.

Movant next argues that the requested material is relevant only to tax offenses; and, as such, cannot properly be brought before the Grand Jury without the government first obtaining certain approvals. The government's response to this is that the subpoena is not primarily concerned with potential tax offenses, and that if the investigation does touch upon tax matters, it is only collaterally. In support of this, the government urges that the work papers of the accountant and the accountant's testimony may contain admissions by Mr. Sklar of receipt of bribery or extortion monies, which would be highly relevant to the investigation of the affairs of the Small Business Administration. However, the government does not deny that Mr. Sklar's tax liability is part of this investigation, and that the subpoenaed material may also be relevant to the tax aspects of the investigation.

Movant argues, that before the government can proceed before the Grand Jury to investigate a tax matter, such a Grand Jury investigation must be approved by the Tax Division of the Justice Department. Such approval will only occur at the request of the Internal Revenue Service, after formal notification through regional counsel, that the ordinary investigative techniques of the Internal Revenue Service are inadequate for specified reasons, and that Grand Jury assistance is necessary. Movant further argues that no United States Attorney is permitted to conduct a Grand Jury investigation specifically into the possibility of tax offenses, unless such use of the Grand Jury has been authorized by the Tax Division of the Justice Department. In support of this allegation, the movant cites no specific regulations or procedures, but simply refers to the testimony of L. K. Baily, Chief of the Criminal Section, Tax Division, Department of Justice, Washington, D. C., that the normal procedure would be for the Internal Revenue Service to request such an investigation through the Tax Division of the Justice Department. This request would be forwarded, with approval, to the United States Attorney (n. t. Aug. 2, 1973, pp. 124–125). Accordingly, we must assume that no more formalized regulations exist. Mr. Baily also admitted that such procedures had not been followed in this case (n. t. Aug. 2, 1973, p. 125).

The essence of this charge is that since standard procedure requires such approval, the Grand Jury is barred from investigating the possibility of any tax offenses, until such authorization has been obtained.

The investigation in this case is being conducted under what is described as the "Philadelphia Plan", where the coordinated investigation, involving various governmental agencies, is conducted by the local United States Attorney, in cooperation with the interested federal agencies. In this case, the investigation is delving into certain irregularities in the operation of the Small Business Administration and is probing into any possible criminal activity involved, including potential tax offenses. Movant urges that since tax offenses were involved, the requisite approvals for a tax investigation should have been obtained prior to taking any aspect of the tax investigation before the Grand Jury. We feel that when the proposal was sent to the Tax Division of the Justice Department, it should have been reviewed and approved, or rejected, rather than simply forwarded to the Criminal Division of the Justice Department, as occurred in this case. However, the question remains, is that sufficient to bar the Grand Jury from investigating any possible tax offenses resulting from the activities of the Small Business Administration.

A similar situation was dealt with by the Supreme Court in Sullivan v. United

States, 348 U.S. 170, 75 S.Ct. 182, 99 L. Ed. 210 (1954). In the Sullivan case, the Court was faced with a situation where Mr. Sullivan had been convicted on an indictment which was returned by the Grand Jury pursuant to an investigation into Mr. Sullivan's tax affairs. This investigation was begun by the local United States Attorney without obtaining the authorization from the Department of Justice, which was required by an executive order and various circular letters. In refusing to reverse the conviction, the Supreme Court stated at page 173, 75 S.Ct. at page 185:

> Therefore, it is not contended that, aside from the Executive Order and a departmental letter, a grand jury may not consider evidence of crime known to the grand jurors or revealed by their investigation.[3] It is only urged that the Executive Order and the departmental letter limited the action of the grand jury in respect to cases concerning violation of internal revenue laws. We hold that the Order and the letter had *no such restrictive effect*, and that the grand jury in this case was free to consider the evidence put before it by Government counsel without authorization from the Attorney General's office in Washington. The evidence was presented by the District Attorney, who was a representative of the Department of Justice, notwithstanding that he failed to comply with the departmental directive. For this he is answerable to the Department, but his action before the grand jury was not subject to attack by one indicted by the grand jury on such evidence.
> [Emphasis Added]

Since the Supreme Court in Sullivan held that violation of such "housekeeping" procedures would not afford relief after the fact of an indictment, we do not see why such violation should allow the court to prohibit the Grand Jury from obtaining the requested information. A Grand Jury that begins an investigation opens up all the ramifications of the particular field of inquiry. United States v. Gilboy, 160 F.Supp. 442 (M.D.Pa. 1958); United States v. Neff, 212 F.2d 297 at 302 (3d Cir. 1954). Accordingly, even if the subpoenaed material had no relevance to the Small Business investigation and was only relevant to certain collateral tax offenses,[4] Mr. Sklar would still have no grounds to prevent such investigation by the Grand Jury.

Movant argues that the Tax Division of the Justice Department has exclusive jurisdiction over any criminal prosecutions brought pursuant to the Internal Revenue laws. For this proposition, he cites Title 28 of the Code of Federal Regulations § 0.70(b). In making this argument, movant, in his supplemental memorandum of law, page 6, quotes the regulation as stating: "The Tax Division has *exclusive* assignment of criminal proceedings arising under the Internal Revenue laws." [Emphasis Added] This quote is from a statement by movant's counsel,[5] and the word "exclusive" is exclusively his, and does not appear in the cited regulation.[6] However, even if that were the case, that situation is not presently before us. The government admits that prior to bringing any indictment for a tax offense, or prior to bringing any count of an indictment for a tax offense, it would obtain the approval of the Tax Division of the Justice Department (n. t. Aug. 2, 1973, pp. 132–133). Accordingly, we will not deal with whether or not such approval is required since such a situation has not yet arisen.

---

3. Likewise, in this case, the movant does not make such a contention. See movant's supplemental memorandum of law, page 3.

4. Contrary to the finding of Judge Green, with which we concur.

5. N.T. July 31, 1973, pp. 72–73.

6. 28 C.F.R. § 0.70 reads as follows:
"Subject to the general supervision and direction of the Attorney General, the following described matters are assigned to and shall be conducted, handled, or supervised by, the Assistant Attorney General in charge of the Tax Division:
(a) . . .
(b) Criminal proceedings arising under the Internal Revenue laws, . . ."

Movant also argues that the non-disclosure provisions of Title 26 U.S.C. § 7213 and Title 18 U.S.C. § 1905 prohibit the disclosure of information relating to the tax returns of movant, as well as any information resulting from any investigation in the movant's income tax liability to the Grand Jury. We must reject this contention. These provisions both read "except as provided by law", and the law is clear that the Grand Jury is free to investigate potential criminal activity. Sullivan v. United States, *supra*. To prohibit the Grand Jury from inspecting movant's tax returns, would be to prohibit the Grand Jury from investigating a legitimate field of inquiry relevant to an ongoing investigation. This we will not do. While we do not think that the procedure, which in effect allows the Internal Revenue Service to bootstrap a tax investigation by clinging to the Small Business investigation, thus avoiding certain procedures within the Internal Revenue Service, is the fairest procedure which could be used; we do not feel that its use amounts to bad faith on the part of the government. Accordingly, the motion to quash the subpoena and to suppress evidence by Henry R. Sklar is denied.