**CORN, Trustee v. CITY OF LAUDERDALE LAKES.**
No. 76-7105
Circuit Court, Broward County
November 24, 1976

10

Hugh S. Glickstein, Hollywood, for the plaintiff.

James C. Brady, Margate, for the defendant.

ARTHUR J. FRANZA, Circuit Judge.

*Agreed final judgment:* This cause came on for final hearing upon the complaint and answer of the parties and was heard on July 28 and September 22, 1976. The court had reserved its ruling upon the defendant's motion to dismiss, which the defendant renewed upon the completion of the parties' cases, and by this agreed final judgment, the court denies said motion.

The final hearing in this cause required one and one-half days of testimony and oral argument. Numerous memoranda of law were presented and considered by the court, in addition to the testimony and numerous documentary exhibits and the plaintiff's trial brief.

The court, having considered all of the foregoing, makes the following finding of fact —

The plaintiff is the owner of a parcel of real property located in the city of Lauderdale Lakes, which is the subject matter of this cause. It abuts two thoroughfares, State Road 7 (U.S. 441) on the east, and N.W. 41st Street on the south, and is located on the northwest corner of said intersection — and will hereinafter be referred to as "the property."

The property is presently unimproved, and is zoned B-3, which classification is "general business."

On the northeast corner of the intersection, on property similarly zoned, a neighborhood shopping center has been constructed with access for its patrons to and from both State Road 7 and N.W. 41st Street.

The property lying to the east and west of the proposed shopping center and the shopping center opposite the property is zoned and presently used for residential purposes. Those residences lying immediately to the east of the property and the shopping center lying opposite the property are single family residences, and those residences to the west of the property are single and multi-family residences.

The plaintiff commenced plans to develop the property into a neighborhood shopping center, with access to and from State Road 7 and N.W. 41st Street in the year 1975.

Pursuant to the requirements of the applicable ordinances of defendant, the plaintiff proceeded in the administrative process before defendant's planning and zoning board, which held a number of meetings on the subject in late 1975 and early 1976, for the purpose of seeking administrative approval for improvement of the property as a neighborhood shopping center.

Simultaneously with the aforesaid administrative progression, the defendant sought from a local firm of consulting engineers an analysis and recommendations as to the most appropriate site plan pertaining to anticipated construction on the property, contemplating ingress and egress from State Road 7 and N.W. 41st Street, as said thoroughfares border the property.

A member of said firm of consulting engineers, who is experienced and qualified as a highway designer and traffic engineer, prepared a graphic geometric design for the improvement of N.W. 41st Street, contemplating an easterly and westerly ingress-egress configuration to the property, which roadway improvement design was incorporated into and with the plaintiff's aforesaid site plan for construction of the proposed neighborhood shopping center.

The plaintiff was directed by the defendant to prepare final architectural plans as part of his presentation to the defendant, and as a result a substantial sum was spent in obtaining final plans for all of the proposed site plan and structures to be constructed on the property, in accordance with the recommendation of the defendant's consulting engineering firm.

Specifically, the means of access to the subject property, as recommended, were three in number —

A. The only access on State Road 7 was at a location in which only southbound traffic could enter to and exit from the property. There is a median in the middle of this thoroughfare which prevents northbound traffic from entering and leaving the property; and it is uncontradicted that a cut

in the median would be unsafe, as well as unobtainable from the state department of transportation. Further, the plaintiff has paid for and obtained a permit from said agency for the driveway in and out of the property to serve southbound traffic.

B. The easterly access on N.W. 41st Street was an entrance and exit for westerly traffic only. The right-of-way design configuration prepared by said engineers retained by the city contemplated a median on that thoroughfare which would prevent eastbound traffic from entering or leaving the property at that location.

C. The westerly access on N.W. 41st Street was a full access to the property for east and westbound traffic on N.W. 41st Street.

The recommendation of the defendant's consulting engineering firm contemplated right-of-way improvements and the use of a strip of property contiguous and running parellel to the south right-of-way line of N.W. 41st Street, which strip of property is also owned by the plaintiff.

Article VII of defendant's charter provides, inter alia, for a special assessment against property owners of the lands which abut property subject to municipal improvements. During the final hearing the plaintiff tendered that he would pay for all of the improvements required by said consulting engineers, as an assessment pursuant to the aforesaid article; and that the aforesaid strip of property would be conveyed to the defendant for right-of-way purposes.

During the continuation of the administrative process, the defendant's city council, without the advantage of the advice of the aforesaid consulting engineers and without the advantage of any technical, objective information, adopted City Resolution 329, which resolution condemned the concept of access to and from the property on N.W. 41st Street.

As a result of a municipal election held on the 9th day of March, 1976, the membership of defendant's city council changed in that three of the incumbent members of the six-man city council were defeated.

On the 17th day of March, 1976, the plaintiff's final site plan was submitted to the defendant's planning and zoning board for its final approval and recommendation. The site plan submitted was in complete accord with the recommendations of the defendant's consulting engineering firm; and, in general, the site plan

has been approved by all of those administrative agencies of the defendant which are required, pursuant to ordinance, to comment upon and approve site plans.

The defendant's planning and zoning board recommended, in writing, to the defendant's city council, that it approve the plaintiff's final site plan, conditioned upon — (a) the plaintiff's compliance with the requirements of City Ordinance 416 (Sec. 6-46 of the Code of Ordinances); and (b) the plaintiff's agreement to satisfy any and all expenditures incurred by the defendant with respect to the improvement of N.W. 41st Street as required by the plaintiff's proposed development and the graphic geometric design of the defendant's consulting engineers.

Throughout the aforementioned administrative process, the plaintiff had been proceeding on the basis that the zoning of the subject property was appropriate for the property's intended use, and that the plaintiff would comply with all of the recommendations of the defendant's aforesaid consulting engineer, which he had agreed to do by the preparation of all plans in conformity with such engineering recommendations.

In reliance upon the foregoing and in anticipation of the city council's approval of the final site plan, the plaintiff, by mid-March of 1976, had negotiated, but had not executed, a long-term land lease for the property for an annual rent of $30,000, and had further undertaken to have the land readied for development, expending substantial sums of money in site preparation.

In similar reliance, the proposed lessee of the subject property and the developer of the property, had negotiated leases or arrangements therefor, with respect to a significant portion of the rental space within the proposed neighborhood shopping center.

The plaintiff, in order to proceed with the planned development, found it necessary to obtain approval of the final site plan by the defendant's city council, pursuant to the requirements of the duly enacted ordinances of the defendant.

On the 23rd day of March, 1976, the plaintiff submitted his final site plan relative to the proposed construction on the property to the city council.

The transcript of the regular city council meeting, held on the 23rd day of March, 1976, relative to the application of plaintiff, and the tape recording of said meeting, reflect an atmosphere of public hostility against the plaintiff and further reflect a predisposition of said city council relative to the plaintiff's application for site plan approval.

During the latter portion of the aforesaid hearing proceedings, the plaintiff withdrew his application for final site plan approval, because of what plaintiff perceived as the predisposition of the members of the council against access to the property from N.W. 41st Street.

The evidence is uncontradicted that notwithstanding the predisposition of the members of the council against access to the property from N.W. 41st Street, particularly as to eastbound traffic, there was no reasonable basis therefor.

The evidence showed that access to and from N.W. 41st Street for the benefit of the subject property was an economic necessity for the proposed development.

The site plan incorporating the aforesaid consulting engineers' recommendations with respect to the geometric design of N.W. 41st Street is reasonable; it provides safe access to and from the property and the subject thoroughfares with two minor modifications as recommended by the expert witnesses, to-wit — (a) a change in the radius at the entrance on State Road 7 to thirty feet; and (b) the elimination of five parking spaces designated by the parties located near the westerly ingress-egress location on N.W. 41st Street.

The proposed shopping center will not be a material originator of traffic, but is basically an accommodator of traffic that is already existing on N.W. 41st Street and State Road 7.

The area in which the property is located is fully developed for residential purposes, and the development of the property into a neighborhood shopping center should reduce, not increase, the traffic otherwise flowing through the intersection of N.W. 41st Street and State Road 7.

The redesign of the right-of-way and N.W. 41st Street, in the manner recommended by the defendant's consulting engineers and the consulting engineers of the plaintiff, as herein stipulated, and incorporated into the plaintiff's revised site plan, attached hereto, should improve the traffic flow in the area and should not create any burden upon the capacity of either thoroughfare.

The parties, subsequent to the final hearing held on the 22nd day of September, 1976, met and negotiated an agreed upon settlement of this cause, whereby it was agreed between the parties as follows —

A. That a geometric road configuration design pertaining to N.W. 41st Street, and contiguous to the subject property, would be accomplished by plaintiff's consulting engineers, Frederic R.

Harris, Inc., in consultation with the city's consulting engineer, Williams, Hatfield & Stoner, Inc., with such amended road design to accommodate one ingress/egress point on the south right-of-way line of N.W. 41st Street and the property and one ingress/egress point on the north right-of-way line of N.W. 41st Street and the contiguous property lying to the south thereof and owned by plaintiff.

B. That the decision of plaintiff's consulting engineer and the city's consulting engineer would be final and dispositive of the roadway design.

C. That the plaintiff and defendant would share the cost of the geometric roadway design of N.W. 41st Street on an equal basis.

D. That the plaintiff shall dedicate to the city of Lauderdale Lakes sufficient property contiguous to the south and north right-of-way lines of N.W. 41st Street to permit the construction and improvements to N.W. 41st Street as contemplated by the geometric roadway configuration design prepared by Frederic R. Harris, Inc. in consultation with Williams, Hatfield & Stoner, Inc.

E. That plaintiff shall pay all costs of roadway construction, including but not limited to, the preparation of all plans and specifications, materials, labor and such other costs, charges and assessments incident to the actual construction and improvement of N.W. 41st Street as contemplated in the geometric road configuration design prepared by Frederic R. Harris, Inc. and Williams, Hatfield & Stoner, Inc.

F. That the plaintiff shall do all things and execute all documents necessary to obtain the necessary and proper permits pertaining to the construction and improvement of N.W. 41st Street as contemplated herein; but no permit fees shall be required by the defendant of the plaintiff.

G. That the plaintiff shall construct and improve N.W. 41st Street in accordance with the geometric roadway configuration design, attached hereto as Exhibit A and expressly made a part hereof; but no inspection fees shall be required by the defendant of the plaintiff.

H. That the plaintiff shall construct the neighborhood shopping center to be developed upon the property in accordance with the site plan, which has been approved by the defendant and which is attached hereto as Exhibit B and expressly made a part hereof; and that nothing herein shall eliminate the requirement on the part of the plaintiff to pay all permit and inspection fees set forth in the ordinances of the defendant.

I. That the plaintiff shall pay all costs of the redesign of the interior of the proposed neighborhood shopping center to be developed upon the property, which redesign was the result of the revision and redesign of the geometric road configuration of and pertaining to N.W. 41st Street, as contemplated herein.

J. That the plaintiff withdraws his contest concerning the constitutionality and the validity of City Ordinance 416; and the issue pertaining thereto shall be rendered moot by the adoption of City Ordinance 504, as the same is attached hereto and made a part hereof as Exhibit C.

K. That the plaintiff's dedication of real property required to effect the geometric road configuration design of N.W. 41st Street and plaintiff's payment of the costs of the improvement of said N.W. 41st Street shall be considered actual and full compliance with the provisions and requirements of City Ordinance 416, as amended by City Ordinance 504.

L. That the plaintiff shall receive an inchoate credit pertaining to the application of the provisions of City Ordinance 504 to the future development of real property within the city of Lauderdale Lakes owned by plaintiff or in which plaintiff has a beneficial interest should said property of future development be owned by a corporation, partnership, joint venture, real estate investment trust, and/or association, in the amount of $6,914.

M. That the rights of the plaintiff to an inchoate credit pertaining to the application of City Ordinance 504 to the future development of lands owned by the plaintiff or in which the plaintiff has a beneficial interest, shall inure to the benefit of the plaintiff's heirs, beneficiaries, personal representatives.

N. That the plaintiff shall waive any claim for damages against the defendant.

O. That the plaintiff and defendant shall bear their own costs incident to this cause.

P. That the plaintiff and defendant shall each waive any right of appeal in this cause.

The parties, through their counsel, executed on November 9, 1976 a stipulation to entry of agreed final judgment.

Accordingly, the court concludes that the bringing of the present action prior to the rendering of any decision by the defendant's city council was not premature. There are at least two similar cases which have been brought to the court's attention, which arose out of this court, wherein the complaints have been upheld in factually similar cases by the District Court of Appeal, Fourth District,

and, in one of those instances, by the Supreme Court of Florida. See *Hollywood Beach Hotel Company v. Hollywood,* Case No. 70-229, and *Hallandale v. Hasam Realty Corp.,* Case No. 76-1705. Both case references are to the DCA decisions. See, also, *Holly Hill v. State,* 132 So.2d 29 (Fla. 1st DCA 1961).

Even the often cited case of *Tampa Port Authority v. Deen,* 179 So.2d 416 (Fla. 2nd DCA 1965), upon which administrative agencies so often rely to prevent the institution of an action because of "prematurity," recognizes that one need not wait when it is clear and unmistakable that constitutional rights will be violated in the absence of an action to prevent such violation.

What could be more antagonistic to an intelligent system of justice than to close the courthouse door to the plaintiff seeking preventive assistance or judicial aid to avoid administrative futility when it is clear and unmistakable that the plaintiff's constitutional rights are going to be violated?

An often overlooked point is that "exhaustion of administrative remedies" is not a jurisdictional matter. As most recently stated in *Tomasek v. City of Des Plaines,* 325 NE 2d 345, 353 (Ill. App. 1975) —

> In *Bass v. City of Joliet* (1973) 10 Ill. App. 3d 860, 295 NE 2d 53, the Court stated:

> > The rule of exhaustion of administrative remedies, unique to zoning cases, is no more than an expression of judicial policy which recognizes that zoning is primarily an administrative function, and is aimed at affording local authorities an opportunity to correct errors and settle disputes before there is judicial intervention. It is not jurisdictional, however, nor is it unreasonably employed, and to prevent needless delay, increase of costs and circuity of action. *It is not applied where the demonstrated attitude of local authorities makes it clear that the administrative relief, or further efforts to obtain it, will not be forthcoming.*

> It is clear in this case the City of Des Plaines has made its opposition to the rezoning apparent, and no purpose would be served by requiring further administrative action. (Emphasis supplied)

In *Napierkowski v. Gloucester Tp.,* 150 A. 2d 481, 485, (N. J. 1959), the court said —

> In the present case, the attitude of the township governing body was such that to require plaintiff to first request a variance before seeking judicial relief would be to require an obviously futile gesture.

Similarly, in *Huntington Beach P. O. Ass'n. v. City of Huntington Beach,* 129 Cal. Rpts. 893, 897 (Cal. App. 1976), the Court held —

> Where the administrative agency has made it clear what its ruling would be, idle pursuit of further administrative remedies is not required by the exhaustion doctrine.

> (Additional California citations omitted)

See, also, *Carter v. City of Bluefield*, 54 SE 2d 747, 754 (W. Va. 1949).

Text authority supports the foregoing principle. Jaffe, *Judicial Control of Administrative Action*, says on page 446 "On occasion courts, even the federal courts, do not require exhaustion when it would be futile, i.e., where it is fairly clear that the claim would be rejected."

48 Tulane Law Review 665, 667, in its comment designated "Exhausting Administrative and Legislative Remedies in Zoning Cases," stated — "But where the hostile attitude of administrative authorities is unmistakable, administrative remedies may be by-passed without detriment."

A number of federal cases emphasize the importance of the appearance of justice in administrative or judicial matters.

The Supreme Court held in the case of *In re Murchison* 75 S.Ct. 623, 625 (1955) —

> A fair trial in a fair tribunal is a basic requirement of due process . . .

> But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U. S. 11, 14, 75 S. Ct. 11, 13.

*Withrow v. Larkin*, 95 S. Ct. 1456 (1975) held —

> Concededly, "a fair trial in a fair tribunal is a basic requirement of due process." In re *Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L.Ed. 942 (1955). This applies to administrative agencies which adjudicate as well as to courts — *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed. 2d 488 (1973). Not only is a biased decision maker constitutionally unacceptable, but "our system of law has always endeavored to prevent even the probability of unfairness."

The participation of one partial member of a multi-member board has been the subject of at least three federal cases.

A case which is particularly applicable to the present matter is *Texaco, Inc. v. F. T. C.*, 336 F. 2d 754, 760 (D. C. Cir. 1964), wherein the court noted —

> *In this case, a distinterested reader of Chairman Dixon's speech could hardly fail to conclude that he had in some measure decided in advance that Texaco had violated the Act.*

We said in *Amos Treat & Co. v. Securities and Exchange Comm'n.*, 113 U.S. App. D.C. 100, 107, 306 F. 2d 260, 267 (1962): ". . . [A]n administrative hearing of such importance and vast potential consequences must be attended, not only with every element of fairness, but with the very appearance of complete fairness. Only thus can the tribunal conducting a quasi-adjudicatory proceeding meet the basic requirement of due process."

The administrative hearing in the present case was certainly as important as that in the *Amos Treat* case, and has perhaps even greater potential consequences. *We conclude that Chairman Dixon's participation in the hearing amounted in the circumstances to a denial of due process which invalidated the order under review.* (Emphasis supplied)

In *Amos Treat & Co. v. Securities and Exchange Commission*, 306 F. 2d 260, 264 (D. C. Cir. 1962), the court said —

Stated otherwise with respect to agency adjudicatory proceedings, due process might be said to mean at least "fair play." . . .

*The Board argues that at worst the evidence only shows that one member of the body making the adjudication was not in a position to judge impartially. We deem this answer insufficient. Litigants are entitled to an impartial tribunal whether it consists of one man or twenty and there is no way which we know of whereby the influence of one upon the others can be quantitatively measured.* (Emphasis supplied)

In *Air Transport Associates of America v. Hernandez*, 264 F. Supp. 227, 232 (D. C. 1967), the court said — "The 'very appearance of complete fairness' on the part of Ms. Hernandez was not present as required by law."

Florida and Federal cases emphasize the absolute necessity for an impartial decision maker in administrative matters.

In the recent case of *Drew v. Insurance Commissioner and Treasurer*, 330 So. 2d 794, 796 (Fla. 1st DCA 1976), the court held —

"An administrative proceeding should provide a citizen with a fair, open and impartial hearing." *State v. Seaboard Air Line Ry. Co.*, 111 So. 391 (Fla. 1927). See also Ford v. Bay County School Board, 246 So. 2d 119 (1 Fla. App. 1970); and Buchman v. State Board of Accountancy, 300 So. 2d 671 (Fla. 1974).

In *Hendrix Manufacturing Company v. N. L. R. B.*, 321 F. 2d 100, 103 (5th Cir. 1963), the court said with respect to administrative hearings — "Bias, hostility, injudicious conduct are therefore out."

See, also, *Wall v. American Optometric Association, Inc.*, 379 F. Supp. 1975 (N. D. Ga. 1974); *Sands v. Wainwright*, 367 F. Supp. 1062 (M. D. Fla. 1973); *National Labor Relations Board v. Phelps*, 136 F. 2d 562, 563, (5th Cir. 1943); *Local No. 3, Etc. v. National Labor Relations Board*, 210 F. 2d 325, 330 (8th Cir. 1954); *Wasson v. Trowbridge*, 382 F. 2d 807, 813 (2nd Cir. 1967); and *Simard v. Board of Education of Town of Groton*, 473 F. 2d 988 (2nd Cir. 1973).

Cases from other states are equally persuasive. See *Jones v. State Department of Public Health and Welfare*, 354 S.W. 2d 37, 39 (Mo. 1962) and *Lake Garda Improvement Assn. v. Town Plan & Zon. Com'n.*, 199 A. 2d 162, 163 (Conn, 1964).

Therefore, based upon the above findings of fact made by the court, it is ordered and adjudged as follows —

(1) The defendant is ordered and directed to approve the site plan of the plaintiff, attached hereto as Exhibit B and by reference made a part hereof, and to issue a building permit to the plaintiff or his authorized representative for the construction of the subject shopping center development in accordance with the site plan attached hereto and made a part hereof as Exhibit B, upon the submission of such plans and specifications pertaining to such development, subject to the provisions of the South Florida Building Code, Broward Edition, and the valid and enforceable ordinances of defendant city.

(2) It is ordered and adjudged that the plaintiff shall do all things and execute all documents necessary to obtain the necessary and appropriate permits, without the payment of permit fees to the defendant, pertaining to the construction and improvement of N.W. 41st Street in accordance with the geometric roadway configuration design attached hereto as Exhibit A and by reference made a part hereof; that the plaintiff shall construct and improve said N.W. 41st Street at the plaintiff's expense, in accordance with said Exhibit A; that the plaintiff shall pay for all costs of roadway construction and improvement, including but not limited to, preparation of all plans and specifications, material, labor and such other costs, charges and assessments incident to the actual construction and improvement of said N.W. 41st Street in accordance with said Exhibit A, except permit and inspection fees otherwise payable to the defendant; that the plaintiff shall execute and deliver to the defendant city a deed of dedication, in recordable form, in favor of the defendant for all real property required as right-of-way improvement for the construction and improvement of said N.W. 41st Street in accordance with said Exhibit A, free of any and all encumbrances; that the plaintiff shall commence or cause to

be commenced such construction and improvement of said N.W. 41st Street upon the issuance of the building permit applicable to the construction of the contemplated shopping center to be developed on the property; and that the plaintiff and defendant shall share the costs incident to the design of the subject N.W. 41st Street as accomplished by Frederic R. Harris, Inc. and Williams, Hatfield & Stoner, Inc. on an equal basis.

(3) It is ordered and adjudged that the issue concerning the constitutionality of City Ordinance 416 (Sec. 6-46 of the Code of Ordinances of Defendant City), as raised in plaintiff's pleadings, is rendered moot by the legislative act of defendant in enacting City Ordinance 504, attached hereto as Exhibit C and by reference made a part hereof; and that the plaintiff has complied with and satisfied the requirements of City Ordinance 416, as amended by City Ordinance 504, attached hereto and made a part hereof as Exhibit C, by (a) the dedication of the real property necessary to effectuate the construction and improvement of said N.W. 41st Street in accordance with the geometric roadway configuration design attached hereto as Exhibit A; and (b) by the payment of all of the costs of the construction and improvement of said N.W. 41st Street contemplated herein.

(4) It is ordered and adjudged that the plaintiff shall have the benefit of an inchoate credit pertaining to the application of the provisions of City Ordinance 504, attached hereto as Exhibit C, to the future development of real property within the City of Lauderdale Lakes owned by the plaintiff or owned by an entity in which plaintiff has a beneficial interest, should said property be owned by a corporation, partnership, joint venture, real estate investment trust and/or association or otherwise, which inchoate credit shall be in the amount of $6,914; that the inchoate credit contemplated herein shall inure to the benefit of the plaintiff's heirs, beneficiaries, and personal representatives; and that the inchoate credit shall be applied and effectuated at such time as the plaintiff submits future site plans pertaining to the development of lands within the city of Lauderdale Lakes, which plaintiff owns or in which he has a beneficial interest.

(5) It is ordered and adjudged that the plaintiff's claim for damages is denied; and that each party shall bear its own costs.

(6) It is ordered and adjudged that the court reserves jurisdiction to enforce the provisions of this stipulated and agreed final judgment and to carry out the intent of same.

The court does not make any rulings on the validity vel non of any ordinances mentioned herein.