**UNITED STATES of America and John G. Shea, Special Agent, Internal Revenue Service, Petitioners-Appellants,**

v.

**COOPERS & LYBRAND et al., Respondents-Appellees,**

and

**Johns-Manville Corporation, Respondent in Intervention-Appellee.**

No. 76–1066.

United States Court of Appeals, Tenth Circuit.

Submitted Nov. 15, 1976.

Decided Feb. 15, 1977.

Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, and Crombie J. D. Garrett, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief, James L. Treece, U. S. Atty., Denver, Colo., of counsel), for petitioners-appellants.

William E. Murane, Denver, Colo. (Ben E. Chidlaw and Paul T. Ruttam, Denver, Colo., on the brief), of Holland and Hart, for respondents-appellees.

James E. Bye, Denver, Colo. (Peter H. Holme, Jr., Charles J. Kall and C. Garold Sims, Denver, Colo., on the brief), of Holme, Roberts & Owen, Denver, Colo., for respondent in intervention-appellee.

Before BARRETT and DOYLE, Circuit Judges, and CHILSON,* District Judge.

* Of the District of Colorado, sitting by designation.

BARRETT, Circuit Judge.

Petitioners-appellants,[1] United States of America and John G. Shea (Shea), Special Agent, Internal Revenue Service (IRS), appeal the denial of enforcement of an IRS summons issued pursuant to 26 U.S.C.A. § 7602,[2] in relation to IRS examination and audit of Johns-Manville, Inc. (J–M) corporate federal income tax returns for the years 1971 and 1972.

J–M, respondent in intervention-appellee, is a major national corporation having subsidiaries and affiliates throughout the United States and abroad. The IRS has audited every federal income tax return of J–M since 1913 and does so on a continuing basis.

Coopers and Lybrand (C&L) is a national firm of certified public accountants employed by J–M who examined and reported on the consolidated statements of J–M for the years 1971 and 1972. It functioned solely in an auditing capacity and did not participate in the actual preparation and filing of J–M's federal tax returns.

During the latter part of 1974 the IRS issued a summons pursuant to § 7602 directing C&L to testify and produce its books and records relative to its examination and audit of J–M. C&L responded and produced voluminous workpapers and documents but declined to disclose its audit program or the tax pool analysis file.

The audit program is a master plan prepared by C&L, specifically tailored for auditing J–M. Included within the audit program is a listing of procedures to be followed by C&L personnel in auditing J–M records with a "check off" method of confirming that such procedures were followed, together with suggestions for future modifications of the plan. The tax pool analysis file prepared by J–M personnel contains its estimates of J–M's contingent liabilities for future income tax periods. It is utilized by J–M in preparing financial statements in compliance with Securities and Exchange Commission's (SEC) requirements and it is also utilized by C&L in verifying that J–M's financial statements have been prepared in accordance with generally accepted accounting principles. It is uncontested that neither the audit program nor the tax pool analysis file were utilized in the preparation of the 1971 and 1972 tax returns.

After C&L refused to produce the audit program and tax pool analysis file, IRS filed its petition for judicial enforcement of the summonses pursuant to 26 U.S.C.A. §§ 7402(b) and 7604(a). A show cause order was issued and a full evidentiary hearing followed. During the hearing Shea testified that the tax pool analysis file might be relevant as a source of possible inconsistent positions or improper figures and that the audit program would bear on J–M's intent and "would assist us in determining whether or not to pursue a particular area." C&L resisted production of its audit program. C&L, joined by J–M, resisted production of the tax pool analysis file. They argued that the information sought was not relevant, that the information was already available to IRS from documents then in its possession, and that strong policy reasons relative to an auditor-client relationship weighed heavily against production.

In denying enforcement of the summonses, the court found that J–M's cooperation with the IRS in relation to the investigation was extensive and that tax fraud had not been charged. The court found and/or concluded, *inter alia*:

1. Hereinafter collectively referred to as "IRS".

2. § 7602 provides in part:
   * * * * * *
   (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
   (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
   * * * * * *

Initially, we conclude that the Service has failed to make the requisite showing that the Audit Program is relevant to the tax investigation pursuant to which it is sought. The evidence establishes to our satisfaction that Coopers and Lybrand has no responsibility for the preparation or review of J–M's income tax returns. J–M's returns are prepared internally by J–M's tax personnel. As a consequence, we conclude that the Audit Program was not prepared in conjunction with or connected in any manner to the preparation or filing of J–M's 1971 and 1972 income tax returns.

\* \* \* \* \* \*

We find from the evidence presented that the Audit Program does not contain any factual data regarding any corporate transactions of J–M; rather it consists solely of a listing of procedures to be followed by C&L personnel throughout the United States in examining books and records of J–M, documentation of the extent to which such proceedings were followed, and suggestions for the future modification of such procedures.

The Audit program was prepared prior to C&L's 1971 and 1972 audits of J–M. During the course of the 1971 and 1972 audits, the only information recorded in the Audit Program was (1) confirmation by C&L personnel that the Audit Program procedures were complied with or (2) explanations of why the procedures were inapplicable in certain instances, and (3) modifications of the Audit Program.

\* \* \* \* \* \*

We next approach the issue of production of the Tax Pool Analysis file and related papers. . . .

\* \* \* \* \* \*

In the instant case, the IRS has not challenged respondents' argument that the tax pool does not contain records of transactions. The evidence is clear that the Tax Pool was not prepared in connection with the preparation and filing of J–M's tax returns. The IRS here does not seek records of corporate transactions or the data which are customarily maintained in support of company transactions, instead it seeks private thoughts and theories of the taxpayer.

Consolidated financial statements are prepared annually by Johns-Manville for inclusion in reports to stockholders and certain mandatory filings with the Securities and Exchange Commission. Coopers and Lybrand examines and reports on these consolidated financial statements (and utilizes the tax pool analysis file to that end).

\* \* \* \* \* \*

. . . The uncontradicted evidence establishes to our satisfaction that the Tax Pool Analysis file and related papers were not issued or compiled in connection with the preparation or filing of J–M's income tax returns. Coopers & Lybrand has no responsibility in regard to determining or reporting on J–M's tax liability. The limited purpose for which the Tax Pool was created by J–M and communicated to C&L was unrelated and distinct from J–M's tax liability or the preparation of J–M's tax returns.

IRS does not contest or challenge the court's findings that C&L had no responsibility for the preparation or review of J–M's income tax returns; that the returns were prepared by J–M personnel; that the audit program does not contain any factual data regarding any corporate transactions of J–M; that the tax pool was not prepared in connection with the preparation and filing of J–M's tax returns; and that the tax pool analysis file was created by J–M for its usage in preparing annual consolidated financial statements and utilized by C&L in verifying that the financial statements were properly reported in accordance with generally accepted auditing procedures. These findings are therefore accepted as true and controlling for purposes of this appeal. *Valdez v. Black*, 446 F.2d 1071 (10th Cir. 1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1167, 31 L.Ed.2d 238 (1972).

On appeal IRS contends the district court (1) "erred in refusing to order enforcement

of IRS summonses for the production of an independent accounting firm's tax pool analysis file, containing memoranda of conversations with taxpayer's employees and the employees' memoranda, maintained by the firm for the purpose of auditing taxpayer's financial statements", and (2) erred in "refusing to order enforcement of Internal Revenue Service summonses for production of an independent accounting firm's audit program prepared and maintained by the firm for the purpose of auditing taxpayer's financial statements."

It is significant, we believe, that the IRS's delineation of the issues on appeal reemphasize that neither the tax pool analysis file nor the audit program were utilized by J–M in the preparation of federal income tax returns; that the tax pool analysis file was utilized solely for auditing J–M's financial statements; and that the audit program's usage was similarly limited. Noteworthy, too, is the fact that all of the work papers involved in the audit program for the years 1971 and 1972 have been turned over to the IRS. Also, J–M and C&L have repeatedly made their personnel available, prior to and during trial, to the IRS to respond to any questions that the Service may have. Even so, the IRS has elected not to question the employees of either company.

## I.

Notwithstanding its concession that the tax pool analysis file was developed by J–M and utilized by J–M and C&L solely for the purpose of preparing annual consolidated financial statements for inclusion in reports to stockholders and for certain mandatory filings with the SEC, IRS contends that the file comes within a § 7602 summons because it *might* show tax fraud, because it *might* show substantial tax liability, and because it would be relevant to show and establish the state of mind of employees at the time the returns were filed. IRS acknowledges it has no direct or precedential substantive authority supportive of its position.

■ The general cases cited by IRS all deal, for the most part, with summonses issued for the production of materials utilized in the preparation and filing of tax returns. However, extending IRS contentions herein to their logical conclusion, it is hard to determine what corporate records would not fall under a § 7602 summonses if the standard endorsed the production of *any* records which *might* show tax fraud or tax liability. IRS does not, as it appears to assume on this appeal, have *carte blanche* discovery.

■ We have long recognized the broad investigative powers of administrative agencies:

Investigative powers given by statute to an administrative agency are not derived from the judicial function and are "more analogous to the Grand Jury." *United States v. Morton Salt Co.,* 338 U.S. 632, 642–643, 70 S.Ct. 357, 364, 94 L.Ed. 401. Questions concerning agency subpoenas should be promptly determined so that the subpoenas, if valid, may be speedily enforced. See *United States v. Davey,* 2 Cir., 426 F.2d 842, 845. *Securities and Exchange Commission v. First Security Bank of Utah,* 447 F.2d 166 (10th Cir. 1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972). 447 F.2d, at 168.

Furthermore, we have heretofore endorsed the broad investigative powers of § 7602:

The bank's final argument, that the examination purportedly authorized by the summons exceeds the statutory reach of § 7602, is also without merit. The case law history of that section makes clear that § 7602 should be "liberally construed in recognition of the vital public purposes which [it serves]." *United States v. Continental Bank & Trust Company,* 503 F.2d 45 (10th Cir. 1974). 503 F.2d, at 50.

However, the investigative powers of § 7602 are not without limitation. Although the IRS need not establish probable cause prior to the issuance of a summons, it must establish that the investigation is pursuant to and relevant to a legitimate purpose; that the information is not already

available; that a determination has been made by the secretary or his delegate that further examination is necessary; and that the other administrative steps required by the Code have been followed. *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Prior to a hearing a taxpayer "may challenge the summons on any appropriate ground." *Reisman v. Caplin*, 375 U.S. 440 at 449, 84 S.Ct. 508 at 513, 11 L.Ed.2d 459 (1964).

Application of the *Powell* standard has been frequent in assessing the validity of a summons. *See*: *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) in which the court approved a summons to acquire payroll records from taxpayers putative former employer and its accountant; *Couch v. United States*, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) in which the court approved a summons directing an accountant to produce business records he had received from a client for preparation of her tax returns from 1955 to 1968; *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) in which the court approved production by summons of documents relating to accountants' preparation of tax returns which had subsequently been transferred to attorneys.

■ In each of the above cases, however, the documents summoned dealt directly with the taxpayer's return as filed or were a source of information for the return, and each of the summons issued had prior judicial endorsement. As the court observed in *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975):

> We recognize that the authority vested in tax collectors may be abused, as all power is subject to abuse. However, the solution is not to restrict that authority so as to undermine the efficacy of the federal tax system, which seeks to assure that taxpayers pay what Congress had mandated and prevents dishonest persons from escaping taxation and thus shifting heavier burdens to honest taxpayers. Substantial protection is afforded by the

provision that an Internal Revenue Service summons can be enforced only by the courts. 26 U.S.C. § 7604(b); *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964). Once a summons is challenged it must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose and is not meant "to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell, supra*, 379 U.S. at 58, 85 S.Ct. 248. The cases show that the federal courts have taken seriously their obligation to apply this standard to fit particular situations, either by refusing enforcement or narrowing the scope of the summons. See, *e. g., United States v. Matras*, 487 F.2d 1271 (CA8 1973); *United States v. Theodore*, 479 F.2d 749, 755 (CA4 1973); *United States v. Pritchard*, 438 F.2d 969 (CA5 1971); *United States v. Dauphin Deposit Trust Co.*, 385 F.2d 129 (CA3 1967). Indeed, the District Judge in this case viewed the demands of the summons as too broad and carefully narrowed them.

420 U.S., at 146–147, 95 S.Ct., at 919.

Because a proceeding to enforce a summons is an adversary proceeding controlled by the Federal Rules of Civil Procedure [*United States v. Pritchard*, 438 F.2d 969 (5th Cir. 1971); *United States v. McKay*, 372 F.2d 174 (5th Cir. 1967)], a district court's determination that a summons should not issue must stand unless determined to be clearly erroneous. *Garcia v. Gray*, 507 F.2d 539 (10th Cir. 1974), *cert. denied*, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 462 (1975); *Williams v. Eaton*, 468 F.2d 1079 (10th Cir. 1972); *Arnold v. United States*, 432 F.2d 871 (10th Cir. 1970).

One of the limitations which may be properly imposed upon a judicial summons was noted in *United States v. Matras*, 487 F.2d 1271 (8th Cir. 1973):

> . . . Obviously, that issue must be determined on an ad hoc basis. Certain-

ly, a taxpayer should not erect roadblocks for the purpose of frustrating or preventing the IRS from a full-scale inquiry of the liability of the taxpayer. By the same token, the government should not, for the mere sake of its convenience, impose unnecessary burdens on a taxpayer in conducting an audit or investigation for tax liability, particularly where, as here, there is no indication of a purpose to escape any tax liability. The term "relevant" connotes and encompasses more than "convenience." Consequently, we are not persuaded to fault the district judge for concluding that the government failed to sustain its burden of proof by alleging a general need for a "road map." If we were to accede to the government's view, it is difficult to imagine corporate materials that might not contribute to a more comprehensive understanding of the workings of the corporation, and thus, according to the government, be deemed relevant to the tax investigation.

487 F.2d, at 1274–1275.

A similar view was espoused in *United States v. Theodore*, 479 F.2d 749 (4th Cir. 1973):

A summons will be deemed unreasonable and unenforceable if it is overbroad and disproportionate to the end sought. *United States v. Harrington*, 388 F.2d 520, 523 (2 Cir. 1968). The Government cannot go on a "fishing expedition" through appellants' records, *United States v. Dauphin Trust Co.*, 385 F.2d 129 (3 Cir. 1967); *contra United States v. Giordano*, 419 F.2d 564 (8 Cir. 1969), and where it appears that the purpose of the summons is "a rambling exploration" of a third party's files, it will not be enforced. *See United States v. Harrington, supra.* Indeed, we agree with Judge Lumbard that "[t]his judicial protection against the sweeping or irrelevant order is *particularly* appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person

under investigation." *United States v. Harrington, supra.* (Emphasis added.) 479 F.2d, at 754.

Applying these standards, we hold that the court properly found that the tax pool analysis file was not relevant and therefore not subject to production under the summons. In this respect we deem it worthy of repeating that it was uncontroverted that the tax pool analysis file was not prepared in connection with or used to facilitate the preparation and filing of J–M's tax returns and that C&L has no responsibility for any J–M tax matters.

II.

IRS contends the court erred in refusing to order enforcement of the summons for the production of C&L's audit program which C&L prepared and maintained for auditing J–M's financial statements. In its brief IRS clarified its position. IRS desires to have the audit program "not only as an index, but as a key to understanding, the audit program would be relevant to the examination of these numerous work papers and other records; the audit program is the guiding document which gives coherence, order, and logical sequence to the audit which generated the work papers." Mere convenience does not make an item producible under an IRS summons. See discussion I., *supra*, particularly, *United States v. Matras, supra.*

The trial court handled a complicated case of first impression in an exemplary manner. We find no error.

AFFIRMED.