587 F.2d 123
 78-2 USTC P 9822
 UNITED STATES of America, and Felix Karul, Revenue Agent of
the Internal Revenue Service, Petitioners-Appellees,
v.
Roger NOALL, as Executive Vice-President of Bunge
Corporation, Respondent- Appellant.
 No. 113, Docket 78-6092.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 25, 1978.
Decided Nov. 17, 1978.
 
 David M. Jones, Asst. U. S. Atty., S. D. N. Y. (Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., Louis G. Corsi and Frederick P. Schaffer, Asst. U. S. Attys., New York City, of counsel), for petitioners-appellees.
 Bruce E. Pindyck, New York City (Olwine, Connelly, Chase, O'Donnell & Weyher, Edward A. Vrooman, Matthew M. McKenna and Gary Hoppe, New York City, of counsel), for respondent-appellant.
 Before FRIENDLY, MULLIGAN and GURFEIN, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 The United States and Felix Karul, an IRS agent, brought this proceeding in the District Court for the Southern District of New York under IRC §§ 7402(b) and 7604(a) to enforce an IRS summons directed to Roger Noall, Executive Vice-President of the taxpayer, Bunge Corporation (Bunge). The petition recited that Karul was conducting an investigation for the purpose of ascertaining the correctness of Bunge's income tax returns for the fiscal years ending March 31, 1972, 1973 and 1974. The summons required Noall to appear before the agent and produce for examination:
 
 
 2
 All Internal audit reports and related work papers for the periods ended 3-31-72, 3-31-73, 3-31-74.
 
 
 3
 An order to show cause having issued, Noall submitted opposing affidavits of counsel, of himself, and of William A. Merritt, Jr., a Vice-President and former Controller of Bunge, who had instituted the internal audit program; these recited various objections to production with which we will deal hereafter. After considering these affidavits and memoranda of law[1] and hearing argument, Judge Cannella entered an order enforcing the summons and denying a request for an evidentiary hearing, from which this appeal has been taken.
 
 
 4
 The Government does not dispute that the internal audit reports and related work papers are not accounting records of Bunge. This, however, is in no way dispositive since IRC § 7602(2) is not so limited but authorizes the Secretary or his delegate, see IRC § 7701(a)(11)(B), to summon any officer or employee of a taxpayer "to produce such books, papers, records, or other data . . . as may be relevant or material" to his inquiry into the correctness of income tax returns.
 
 
 5
 The affidavit of Bunge's counsel described the audit reports as consisting
 
 
 6
 primarily of the analyses by Bunge's internal auditors of the books and records by various divisions and related corporations as part of Bunge's program to monitor and supervise the accounting, financial planning, and established operational plans and procedures of those divisions.
 
 He also stated that
 
 7
 (t)he internal audit reports represent an attempt by Bunge to insure uniform bookkeeping practices, compliance with management directives and with internal control and operational procedures by those divisions.
 
 
 8
 and that
 
 
 9
 the internal audit reports may include hearsay, rumors, opinions and other evidence gathered from the examination of certain bookkeeping practices by Bunge's employees.
 
 
 10
 The Noall and Merritt affidavits added nothing significant except for Merritt's statement that the work papers, documents and other materials used in preparing the tax returns "did not include, nor were they derived from, the internal audit reports or their related work papers prepared by Bunge during those years." Relying particularly on United States v. Coopers & Lybrand, 413 F.Supp. 942 (D.Col.1975), Aff'd, 550 F.2d 615 (10 Cir. 1977), Noall contends that the Government has not established the relevance of the documents sought and that public policy considerations dictate against their compelled production.[2] If we do not accept this position, Noall requests that we remand for an evidentiary hearing.
 
 
 11
 The statutory language is "may be relevant or material". Congress acted advisedly in using the verb "may be" rather than "is", since the Commissioner cannot be certain that the documents are relevant or material until he sees them. This court has consistently held that the threshold the Commissioner must surmount is very low, namely, "whether the inspection sought 'might have thrown light upon' the correctness of the taxpayer's returns". See Foster v. United States, 265 F.2d 183, 187 (2 Cir.), Cert. denied, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed.2d 1261 (1959). The threshold is particularly low when, as here, the papers at issue are the taxpayer's own and there is no question of the invasion of the privacy of third persons against their will. Cf. United States v. Harrington, 388 F.2d 520, 523 (2 Cir. 1968).
 
 
 12
 On Bunge's own statements the internal audit reports and related work papers pass the applicable test. Clearly the purposes of the internal audit include the detection of overstatements or understatements of revenues or expenses, and of identifying accounting procedures that would lead to these. If the internal auditors have ascertained an understatement of revenues or an overstatement of expenses, this plainly might throw light on the correctness of the returns. We find no significance in the point, stressed by appellant, that the internal audit reports and related work papers were not used in preparing Bunge's income tax returns. The Commissioner's interest lies in whether the tax returns correctly reflected Bunge's actual income, not simply whether they were correctly prepared from the books of account and other records used. We are clearly on record on this score. United States v. Shlom, 420 F.2d 263, 265 (2 Cir. 1969), Cert. denied, 397 U.S. 1074, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970).
 
 
 13
 We are similarly unpersuaded by appellant's argument that enforcement of the summons runs counter to public policy since Bunge employees would be inhibited from full and frank disclosure to the internal auditors if they knew that their statements or investigations flowing from them were subject to production at the insistence of the IRS. In support of this contention appellant cites a number of non-tax cases where discovery of internal reports or other information was denied: Keyes v. Lenoir Rhyne College, 552 F.2d 579 (4 Cir.), Cert. denied, 434 U.S. 904, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977) (action under Title VII of the Civil Rights Act of 1964); Richards v. Maine Central R.R., 21 F.R.D. 590 (D.Me.1957) (wrongful death action under Safety Appliance Act and Federal Employers' Liability Act); Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C.), Aff'd on rehearing, 51 F.R.D. 187 (D.D.C.1970), Aff'd, 156 U.S.App.D.C. 199, 479 F.2d 920 (1973) (malpractice suit); Gillman v. United States, 53 F.R.D. 316 (S.D.N.Y.1971) (wrongful death action under Federal Tort Claims Act); Banks v. Lockheed-Georgia Co., 53 F.R.D. 283 (N.D.Ga.1971) (employment discrimination suit); New York Stock Exchange, Inc. v. Sloan, 22 F.R.Serv.2d 500 (S.D.N.Y.1976) (private action under Securities Exchange Act of 1934); Scott v. McDonald, 70 F.R.D. 568 (N.D.Ga.1976) (malpractice suit). As is apparent, the factual setting of these cases is quite different from that here. Also all these cases arose in the course of discovery where the Rules of Civil Procedure leave much to the judge's discretion. With respect to enforcement of the tax laws, Congress itself has decided the policy issue, and it is not for the courts to challenge that determination. In this, as in many other procedural questions, the collection of the revenue stands apart. See Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. (59 U.S.) 272, 282, 15 L.Ed. 372 (1856); United States v. McKay, 372 F.2d 174, 176 (5 Cir. 1967); but see United States v. Brown, 478 F.2d 1038, 1040-41 (7 Cir. 1973).
 
 
 14
 This brings us to the Tenth Circuit's decision in United States v. Coopers & Lybrand, supra, 550 F.2d 615. The court there affirmed a district court ruling which declined to enforce a summons requiring an independent accounting firm to produce two sets of documents its program for conducting the audit of the taxpayer, Johns-Manville, Inc., and a "tax pool analysis" file, prepared by the taxpayer's personnel, which dealt with Johns-Manville's contingent income tax liabilities. The portion of the decision relating to Coopers & Lybrand's audit program, namely, its instructions to its auditors, affords no support to Noall.[3] Here the Government did not seek Bunge's internal audit Program ; rather it sought the results. These had already been turned over by Coopers & Lybrand, 550 F.2d at 617, 619, and were not at issue in that case. In refusing to enforce the summons in regard to the tax pool analysis, both the district court and the court of appeals gave much weight to the fact that this was not used in preparing the company's income tax return, 413 F.Supp. at 950, 953-54, 550 F.2d at 620-21.[4] To the extent that the decision was influenced by this factor, it is not authoritative in this circuit.[5]
 
 
 15
 What we said in United States v. Morgan Guaranty Trust Co., 572 F.2d 36, 42 n. 9 (2 Cir.), Cert. denied sub nom. Keech v. United States,--- U.S. ----, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978), largely disposes of appellant's request for an evidentiary hearing.[6] If appellant wished to advance expert accounting opinion on lack of relevance or materiality of the internal audit reports and related working papers, as was done by oral testimony in Coopers & Lybrand, it could have proffered appropriate affidavits. If what appellant desires is to have the district judge examine the materials In camera so as to increase his understanding of their relevancy and materiality to the tax investigation, this would be a task which, in most cases, certainly including this one, would be so burdensome and probably so impossible of performance that Congress could not have meant to impose it upon busy district judges.
 
 
 16
 Affirmed.
 
 
 
 [1]
 As is not uncommon, the Joint Appendix submitted pursuant to FRAP 30 is heavily encumbered with these memoranda. Memoranda of Law in the district court are not part of the record on appeal, FRAP 10(a), and should not be transmitted by the clerk under FRAP 11(b) or reproduced in an appendix under FRAP 30 except when the memoranda have independent relevance, e. g., where there is a dispute whether a point was raised or a concession made in the district court. See Aquascutum of London, Inc. v. S.S. American Champion, 426 F.2d 205, 213 n. 6 (2 Cir. 1970); Drewett v. Aetna Casualty & Surety Co., 539 F.2d 496, 498-501 (5 Cir. 1976). The Joint Appendix also contains multiple copies of two opinions in cited cases, both of which are available in official reports. Although it is useful for the court to have copies of opinions in cases not yet officially reported, they should be annexed as addenda to the briefs or filed along with them rather than being included in the appendix
 
 
 [2]
 Bunge's further argument, namely, that the Government has not satisfied the requirement of United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), of showing "that the information sought is not already within the Commissioner's possession" borders on the frivolous. The fact that the Commissioner has been given access to Bunge's books and records does not mean that he is already in possession of the audit reports and work papers which he thinks may cast doubt upon the reliability of them
 
 
 [3]
 The adverse effects of disclosure of this program on Coopers & Lybrand are developed in the opinion of the District Court, 413 F.Supp. at 948-49; the lack of benefit to the Government is explained by the Court of Appeals, 550 F.2d at 621
 
 
 [4]
 The district court also emphasized that the tax pool analysis consisted of projections rather than records of actual transactions. 413 F.Supp. at 952-53
 
 
 [5]
 We need not and do not express any opinion as to what we would do if confronted with the precise problem of the tax pool analysis presented to the Tenth Circuit in Coopers & Lybrand
 
 
 [6]
 The authoritativeness of this portion of the Morgan Guaranty opinion is not affected by the refusal of a bare majority of the Court to accept part of the dicta on 572 F.2d at 41-42. United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978)