UNITED STATES of America and Theodore Taks, Revenue Agent, Internal Revenue Service, Plaintiffs,

v.

PRICE WATERHOUSE & CO. and David Lawrence, Partner, Defendants.

No. 81 C 0226.

United States District Court,
N. D. Illinois, E. D.

May 15, 1981.

---

Mary S. Rigdon, Asst. U. S. Atty., Chicago, Ill., James H. Jeffries, Robert G. Nath, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D.C., for plaintiffs.

Douglas H. Walter, John Scotellaro, Bell, Boyd, Lloyd, Haddad & Burns, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Petitioners, the United States and Revenue Agent Theodore Taks, have brought this action to enforce an Internal Revenue Service summons issued to defendants Price Waterhouse & Co. ("Price Waterhouse"), a firm of independent public accountants, and David Lawrence, a general partner of Price Waterhouse, in connection with an examination conducted by the IRS of the potential tax liability of Cotter & Co. ("Cotter") for 1975 and 1976. This matter is currently before the Court on cross-motions for summary judgment. The issuance of a summons to produce documents is authorized under and guided by section 7602 of the Internal Revenue Code of 1954, 26 U.S.C. § 7602. Section 7602 provides in pertinent part that:

> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry ...

In this case, the summons is directed at a "tax provision memorandum"[1] prepared by Price Waterhouse in relation to its audit of Cotter. In the memorandum, Price Waterhouse evaluated the adequacy of Cotter's accrual or "reserve" for income taxes in relation to its financial status. The memorandum never was furnished to Cotter and was not used by Cotter in connection with preparation of its 1976 tax return. In response to the IRS summons, Price Waterhouse delivered a complete copy of the memorandum to the IRS subject to four excisions. Thus, the issue before the Court is limited to whatever information was excised by Price Waterhouse.[2]

1. Similar documents also have been referred to as tax accrual workpapers, tax contingency files, tax reserve memoranda, and tax pool analyses.

2. In the letter from respondents' counsel that transmitted the memorandum to the IRS, counsel stated, "It should not be construed as an admission on the part of the firm that the Internal Revenue Service is, in fact, entitled to all of the portions of the memo not excised in this case or that it would be entitled to similar information in other investigations by the Service relating to other taxpayers." Regardless

Price Waterhouse describes the content of the excisions as follows:

> Three of the four excisions mention routine tax questions that the IRS on occasion raises with taxpayers, but to the best of Mr. Lawrence's knowledge the IRS has not to date discussed with Cotter.... The final excision consists of Price Waterhouse's opinion of the estimated amount of tax liability if issues raised by the IRS in 1973 and 1974 were also raised in later years. Memorandum in Support of Respondents' Motion to Vacate Ex Parte Order to Show Cause at 5–6.

By comparing the portions of the memorandum turned over to the IRS, with those portions excised by Price Waterhouse, the specific nature of respondents' objections becomes clear. Since both the excised and unexcised portions of the memorandum reflect the opinions, thoughts, and judgments of Price Waterhouse, that cannot be the basis of their objection. Rather, Price Waterhouse objects to turning over material reflecting its opinions, thoughts, and judgments *on issues not specifically identified by the IRS.*[3] Thus, the Court must determine whether the summons power of the IRS reaches this narrow category of documents.[4]

The parties agree that the guidelines for determining the enforceability of an IRS summons were established by the Supreme Court in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), where the Court held that the government need not show probable cause in order to obtain enforcement of a summons. In *Powell,* the Court held that before a summons could be enforced, the government must show (1) that the investigation was conducted pursuant to a legitimate purpose, (2) that the materials sought may be relevant to that purpose, (3) that the information sought is not already within the possession of the IRS, and (4) that the administrative steps required by the Code have been followed. 379 U.S. at 57–58, 85 S.Ct. at 254–55. Price Waterhouse contends that none of these four requirements has been met, and has filed a separate affirmative defense with respect to each of these four predicates to IRS enforcement. Price Waterhouse also argues that the Court must take into account public policy considerations which are said to weigh against enforcement of the summons. Price Waterhouse, however, specifically eschews making an argument on the basis of accountant-client privilege, no doubt, in light of the Supreme Court's statement in *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973), that no confidential accountant-client privilege exists under federal law.

### (1) *Was The Investigation Conducted Pursuant To A Legitimate Purpose?*

■ This Court has not found a single case holding that IRS inquiries directed to tax provision memoranda are conducted pursuant to an illegitimate purpose. Indeed, in *United States v. Coopers & Lybrand,* 413 F.Supp. 942, 946 (D.Colo.1975), *aff'd,* 550 F.2d 615 (10th Cir. 1977), the case most favorable to respondents, the court stated as follows: "We regard the thrust of the instant investigation to be in harmony with the authorized statutory purposes outlined in section 7602 and consequently, we

---

of this disclaimer, this Court will not rule on the portions of the memorandum already turned over to the IRS, since, for purposes of enforcing the IRS summons, that issue is moot. *United States v. Arthur Andersen & Co.,* 623 F.2d 720 (1st Cir. 1980).

**3.** Price Waterhouse offered to supply the IRS with all factual information regarding issues specifically identified by the agent. Price Waterhouse, however, firmly resisted turning over material not so identified.

**4.** Although respondents urge the Court to frame the question as being whether the thoughts, ideas, and opinions of independent auditors are subject to IRS summons, such a characterization would be more broad than that compelled by the record. In this area of law, including issues of vital concern to accountants and the IRS and requiring sensitive reflection upon the interests of all involved, this case is in an inappropriate posture to provide a basis for the sort of far-reaching precedent advocated by respondents. *See United States v. Arthur Andersen & Co.,* 623 F.2d 725, 729 (1st Cir. 1980).

find the first element of the *Powell* criteria to be satisfied." This Court concurs with that conclusion and finds that the IRS investigation was conducted pursuant to the legitimate purpose of ascertaining the tax liability of Cotter for 1976.

### (2) *Is The Information Already In The Hands Of The IRS?*

■ Respondents argue that because the IRS already has the facts that form the basis for the opinions sought, the IRS is already in possession of the requested information. This argument must fail for two reasons. First, it is clear that the IRS does not have the factual basis for the opinions sought by the IRS and contained in the excised portions of the memorandum. Respondents argue that they have refused to provide only that material that reflects its opinions or judgments with respect to issues not identified by the IRS. Since the IRS did not even have sufficient information to allow for identification of the issues in the excised portions of the memorandum, respondents cannot logically argue that the IRS already has that information in its possession. Moreover, even if the IRS did have possession of the factual basis for the documents sought, every court that has considered the question has held that the IRS has the right to review documents containing opinions, regardless of whether the government already has documents that contain the factual bases for those opinions. *See, e. g., United States v. Noall,* 587 F.2d 123, 125 n.2 (2d Cir. 1978); *United States v. Arthur Andersen & Co.,* 474 F.Supp. 322, 330 (D.Mass.1979), appeal dism., 623 F.2d 720 (1st Cir. 1980); *United States v. First Chicago Corp. & Affiliated Corps.,* 43 AFTR 2d 79–704 (N.D.Ill.1979). Indeed, in *Noall* this argument was referred to as bordering on the frivolous.

### (3) *Have The Administrative Steps Required By The Code Been Followed?*

■ Respondents refer to certain Information Notices (guidelines promulgated by the IRS for its agents) and argue that the agent here did not follow the procedures outlined in the Notices. The IRS contends that the Notices were promulgated after the summons at bar was issued. Even if the respondents were factually correct and the agent here did not follow his guidelines, this does not mean that the Code has been violated. The *Price* decision specifically requires "that the administrative steps required by the Code" be followed. Violations of informal guidelines do not rise to violations of "the Code."

### (4) *Are The Materials Sought Relevant?*

In evaluating the relevance of the documents at issue, it is essential to recognize the broad statutory mandate given to the IRS by Congress. Section 7602 of the Internal Revenue Code authorizes the IRS to examine any data "which *may be relevant or material*" to ascertaining the correctness of a return. (Emphasis added.) In examining this standard, the Court of Appeals for the Seventh Circuit has stated that, "the government need only show that the records it seeks are relevant and material to its investigation, i. e., that the inspection of the desired records might throw a light upon the correctness of a taxpayer's return." *United States v. Turner,* 480 F.2d 272, 279 (7th Cir. 1973).

■ Respondents' relevance argument cannot withstand scrutiny given this standard, and given the fact that respondents produced for the IRS documents containing opinions, thoughts, and judgments with respect to issues specifically identified by the IRS. The fact that the IRS does not have sufficient information to pose a specific question as to opinions contained in the excised material does not make those opinions any less relevant to the issue of potential tax liability. Indeed, such opinions are very likely to be relevant to the issue of tax liability.[5]

Moreover, under respondents' theory, the task of deciding what issues have been iden-

---

**5.** In affidavits attached to the government's briefs, a number of IRS revenue agents have attested to relevance of and need for IRS access to the tax reserve memoranda of Cotter.

tified by the IRS would fall upon the summoned party, thus allowing that party to control the scope of the audit. This result can hardly be deemed acceptable and certainly was not the intent of Congress in drafting the broad authorizing language found in section 7602. *See United States v. Riley Co.,* 45 AFTR 2d 80–1164, 80–1 USTC Section 9157 (N.D.Ill.1980); *United States v. Acker,* 325 F.Supp. 857 (S.D.N.Y.1975). Finally, respondents' argument is founded upon a misconceived scenario, which would permit the taxpayer to withhold relevant information unless the IRS stated the magic words identifying an issue. This, however, would misconstrue the purpose of the summons procedure, which is to determine the truthful scope of the taxpayer's liability, rather than to engage in a sophisticated game of hide and seek.

In deciding that the IRS summons here at issue is relevant, the Court is not unmindful of the policy arguments asserted by the respondents.[6] However, the narrow question presently before the Court does not require that those policy concerns be addressed herein.

In summary, the Court finds that the IRS summons issued to respondents is in full accord with the standards established by the Supreme Court in *Price,* and, accordingly, the government's motion for summary judgment for enforcement of the summons is granted and respondents' motion for summary judgment is denied. It is so ordered.

---

**6.** Respondents have presented to the Court a wealth of affidavits from various representatives of the independent accounting profession. These affiants express concern that if tax reserve memoranda are subject to disclosure to the IRS, it would (1) jeopardize the relationship of candor and full disclosure which is necessary between a taxpayer and its independent accountants; (2) inhibit auditors in fulfilling their responsibility to document work performed; and (3) make it more difficult for accountants to insist upon proper accounting and disclosure of information from taxpayers.