Robert B. REICH, Secretary
of Labor, Petitioner,

v.

HERCULES, INC., Respondent.

Civ. A. No. 93–3732.

United States District Court,
D. New Jersey.

May 6, 1994.

Stephen D. Dubnoff, U.S. Dept. of Labor, Office of the Sol., New York City, for petitioner.

Michael J. Connolly, Cross Wrock, P.C., Detroit, MI, for respondent.

## MEMORANDUM OPINION

BASSLER, District Judge.

This case was referred to United States Magistrate Judge Dennis M. Cavanaugh for pretrial proceedings in accordance with 28 U.S.C. §§ 636(b)(1)(B) and (C), Fed.R.Civ.P. 72, and Local Rule 40A.2.

This matter is now before the Court on the Report and Recommendation of the Magistrate. For the most part, the Magistrate recommends that this Court enforce the administrative subpoena duces tecum which petitioner Secretary of Labor ("the Secretary") has served on respondent Hercules, Inc.

("Hercules"). Under Fed.R.Civ.P. 72(b) and Local Rule 40 D.5, Hercules has filed timely objections to the Report and Recommendation. This Court has conducted a *de novo* review.

For the following reasons, the Court shall adopt the Report and Recommendation as the findings of fact and conclusions of law of this Court.

Hercules manufactures explosives at its New Jersey plant. A 1989 investigation under the Occupational Safety and Health Act resulted in the Secretary issuing citations against Hercules. A settlement was reached between the Secretary and Hercules in 1991.

In March 1993, the Secretary commenced a new investigation of Hercules. In connection with this new investigation, the Secretary issued an administrative subpoena to Hercules under 29 U.S.C. § 657(b). This subpoena sought safety audit reports prepared by Hercules from 1987 through 1992. (The Secretary later modified his request to include reports prepared only from 1989 through 1992.) Hercules objected to the subpoena, claiming that the reports were privileged, and the Secretary filed the present petition to compel compliance with the subpoena.

The Magistrate recommends that all safety audit reports which the Secretary seeks be turned over, except for one report, dated December 4, 1991 and entitled "Attorney Directed Kenvil Plant Inspection." The Magistrate concluded that this report was protected by the attorney-client privilege.

Hercules makes two objections to the Report and Recommendation: (1) the Magistrate erred in rejecting its claim of "self-critical analysis" privilege; and (2) the subpoena enforcement proceeding is moot, because the safety audit reports are currently the subject of discovery requests in administrative litigation between the Secretary and Hercules. This administrative litigation resulted from citations issued by the Secretary while the subpoena enforcement proceeding was pending.

As to Hercules's "self-critical analysis" argument, the Court has conducted a *de novo* review of the issue, and the Court is in

agreement with the Magistrate's rejection of this privilege. The Court shall therefore adopt the well-reasoned opinion of the Magistrate.

■ The Court also rejects Hercules's mootness argument. When an administrative agency issues a subpoena pursuant to broad statutory authorization, a supervening civil proceeding does not render the subpoena moot. *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1517–18 (D.C.Cir.1993); *United States v. Frowein*, 727 F.2d 227, 231–32 (2d Cir.1984); *In re Stanley Plating Co., Inc.*, 637 F.Supp. 71, 72–73 (D.Conn.1986).

■ Even if there were substantive merit to Hercules's mootness argument, the Court would reject it as untimely because it was not raised before the Magistrate. Although this Court must review the Report and Recommendation *de novo*, Hercules is not entitled as of right to present arguments to this Court which were not seasonably presented to the Magistrate. *Paterson–Leitch Co., Inc. v. Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990–91 (1st Cir.1988). "It would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." *Id.* at 991.

In this case, neither of the parties has provided the Court with the exact date that the administrative litigation commenced, but the Court gathers from the Occupational Safety and Health Review Commission docket numbers that it commenced in 1993. Respondent's Objections at 2. As the Report and Recommendation was not filed until April 5, 1994, there was ample time for Hercules to inform the Magistrate of its argument that the subpoena enforcement proceeding was moot. Hercules was not entitled to hold this argument back while waiting to see if the Magistrate's decision would be favorable.

For the above reasons, the Court shall adopt the Magistrate's finding of fact and conclusions of law. An appropriate order follows.

## ORDER

This matter having come before the Court on the Report and Recommendation of United States Magistrate Judge Dennis M. Cavanaugh, recommending that the petition of Robert B. Reich to enforce an administrative subpoena be granted in part and denied in part;

Respondent Hercules, Inc. having filed objections to the Report and Recommendation under Fed.R.Civ.P. 72(b) and Local Rule 40 D.5;

The Court having conducted a *de novo* review;

For the reasons set forth in the Court's Memorandum Opinion filed this day; and

For good cause shown;

It is on this 6th day of May, 1994 ORDERED that the Report and Recommendation of United States Magistrate Judge Dennis M. Cavanaugh, filed April 5, 1994, is hereby adopted as the findings of fact and conclusions of law of this Court.

It is FURTHER ORDERED that respondent shall produce all documents required by the subpoena that petitioner issued on June 21, 1993, with the following exceptions:

(1) Respondent need not produce any documents dated in the years 1987 and 1988; and

(2) Respondent need not produce the document dated December 4, 1991 and entitled "Attorney Directed Kenvil Plant Inspection."

It is FURTHER ORDERED that the documents shall be produced by May 23, 1994.

## REPORT & RECOMMENDATION

CAVANAUGH, United States Magistrate Judge:

This matter comes before the Court on the petition of Robert B. Reich, Secretary of Labor, United States Department of Labor ("the Secretary"), to enforce an administrative subpoena *duces tecum* served upon Respondent Hercules, Inc. ("Hercules") pursuant to Section 8(b) of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 657(b) ("OSHA"). The matter was referred to me for the within Report and Recommendation by the Honorable William G. Bassler pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Fed.R.Civ.P. 72, and New Jersey Local Rule 40 A.2. For the reasons discussed below, the undersigned recommends that the Secretary's petition be granted in part and denied in part.

## BACKGROUND

Hercules is an international corporation which manufactures various products. Hercules maintains a plant in Kenvil, New Jersey, where explosives and smokeless powders are produced. In June 1989, an explosion occurred at the Kenvil Plant. An OSHA investigation resulted in citations being issued against Hercules in November 1989. A stipulated settlement was reached between the parties in October 1991. In March 1993, the Secretary commenced a new inspection, which included a follow-up inspection to see whether Hercules had abated its previous violations.

In June 1993, the Secretary issued an administrative subpoena to Hercules seeking any safety audits conducted by Hercules with regard to, *inter alia*, Hercules' storage facilities, machine shops, and glaze barrel operations during the years 1987 through 1992.[1] Hercules opposed this subpoena on the grounds that the materials sought are confidential and privileged. This action resulted. Hercules has turned over the purportedly privileged materials to this Court for *in camera* review.

## DISCUSSION

▉ Under Section 8(b) of OSHA, the Secretary has the authority to subpoena witnesses and documents in connection with an agency investigation. While OSHA itself does not provide specific subpoena enforcement standards, an administrative subpoena issued pursuant to an agency investigation is judicially enforceable if three conditions are met: (1) the inquiry is within the scope of the agency's authority; (2) the subpoena is not too indefinite; and (3) the information sought

---

1. The Secretary has since modified his request to include only the years 1989–1992.

is reasonably relevant to the agency inquiry. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950) (citing *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946)). Here, there is no dispute that the Secretary's subpoena satisfies these requirements. Hercules instead claims that the subpoenaed documents are protected by three privileges: the self-critical analysis privilege, the attorney-client privilege, and the attorney work-product doctrine. I will address each argument in turn.[2]

*Self–Critical Analysis Privilege*

 The privilege of self-critical analysis is designed to encourage parties to engage in candid self-evaluation without fear that such criticism will later be used against them. The privilege finds its roots in the case of *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), *aff'd* 479 F.2d 920 (D.C.Cir.1973), a malpractice action in which the minutes and reports from a hospital medical review committee's investigation of a patient's death were found to be privileged. The *Bredice* Court reasoned that confidentiality would facilitate the free flow of information necessary to effectively investigate the matter, that to require disclosure would stifle that free flow of information, and that there was an "overwhelming" public interest in allowing the hospital committee to proceed on a confidential basis. 50 F.R.D. at 250–51. Hercules argues that the materials sought by the Secretary deserve this protection, and to require disclosure would defeat the public's interest in having companies like Hercules voluntarily work to enhance safety in their operations. Although this argument does have some appeal, it does not succeed here.

While the privilege has been recognized in the context of private litigation, it has regularly been rejected in cases where documents are sought by a governmental agency. *See, e.g., Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207 (D.C.Cir.1980); *Emerson Electric Co. v. Schlesinger*, 609 F.2d 898 (8th Cir.1979); *United States v. Noall*, 587 F.2d 123 (2d Cir.1978), *cert. denied* 441 U.S. 923,

99 S.Ct. 2031, 60 L.Ed.2d 396 (1979); *Reynolds Metals Co. v. Rumsfeld*, 564 F.2d 663 (4th Cir.1977), *cert. denied* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978); *United States v. Dexter Corp.*, 132 F.R.D. 8 (D.Conn. 1990). As the Court of Appeals for the District of Columbia noted, "this conclusion makes sense in light of the roots of the privilege in the public interest, and the strong public interest in having administrative investigations proceed expeditiously and without impediment." 628 F.2d at 210; *see also United States v. Dexter Corp.*, 132 F.R.D. at 9–10 ("[A] court should take cognizance, in an action brought by the United States to enforce duly enacted laws, of Congress's role in declaring what is in the public interest.... [A]pplication of the 'self-critical' privilege in this action would effectively impede the Administrator's ability to enforce the Clean Water Act, and would be contrary to stated public policy"). Here, the public interest is served by allowing the Secretary to proceed freely in his investigation of potential OSHA violations.

In addition, courts have distinguished application of the privilege during discovery, where courts have broad discretion under the Federal Rules of Civil Procedure to apply a particular privilege, from situations where enforcement of an administrative subpoena is sought. *See FTC v. TRW*, 628 F.2d at 211; *U.S. v. Noall*, 587 F.2d at 126. In those cases, the particular administrative agency was granted broad powers of investigation and subpoena by Congress, and those grants were given appropriate deference by the courts. Likewise here, Congress here has given the Secretary extremely broad investigatory and subpoena power, *see Martin v. Hammermill Paper*, 796 F.Supp. 1474, 1475 (S.D.Ala.1992), and it is not this Court's place to second-guess Congress, *id.* (citing *Chevron, USA, Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 866, 104 S.Ct. 2778, 2781–82, 2793, 81 L.Ed.2d 694 (1984)).

Therefore, I find that the self-critical analysis privilege cannot protect the materials sought here from disclosure.

**2.** I note that, since federal law supplies the rule of decision here, the federal common law of

privilege rather than state law of privilege applies. Fed.R.Evid. 501.

### Attorney–Client Privilege

When legal advice of any kind is sought from an attorney acting in that capacity, communications relating to that purpose, made in confidence by the client, are permanently protected from disclosure by the client or the attorney unless the protection is waived. *United States v. Rockwell International*, 897 F.2d 1255, 1264 (3d Cir.1990). The privilege promotes the broad public interest in the observance of law and administration of justice by encouraging full and frank communications between a party seeking informed legal advice and an attorney who can provide that advice. *Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1423 (3d Cir.1991).

Because the privilege obstructs the truth-finding process, however, it is construed narrowly. *Id.* "The privilege 'protects *only* those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Id.* at 1423–24 (quoting *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976)) (alteration in original).

The bulk of the materials submitted by Hercules are not protected by the attorney-client privilege. Most, such as the reviews by Hercules' Nitroglycerin Board ("NGB") and Aerospace Propulsion Standards Board ("APSB"), were made in the regular course of business, for at least two years prior to the accident in 1989, for Hercules' own internal safety reasons.

Hercules has submitted affidavits from its outside attorney and two in-house attorneys stating that, after the 1989 accident and OSHA investigation, they informed plant managers that future safety evaluations were to be directed to them and were to be considered confidential and privileged attorney-client communications or attorney work-product. They claim that all post–1989 safety evaluations were done at their behest and under their direction for purposes of litigation and settlement. The attorneys' instructions supposedly were meant to increase candor in the audits. However, the evidence does not support these claims.

Noticeably absent from Hercules' submissions are any affidavits from Hercules plant managers attesting to these instructions from counsel and how their evaluation procedure changed after 1989. In fact, the affidavit of Hercules' counsel even states that "[a] number of the audits would have been performed routinely by the Kenvil facility notwithstanding the OSHA inspection and not under the attorney client or work product privilege. However, I informed the plant that now because of the pending litigation they must be made confidential." *Affidavit of Michael J. Connolly, Esq.* at ¶ 7. Here, Hercules seems to be arguing that by merely labelling these materials "confidential" and "privileged," they magically become so. However, as noted above, the attorney-client privilege protects "*only* those disclosures ... which might not have been made absent the privilege." *Westinghouse, supra,* at 1423–24.

I have reviewed the safety audits and I see no material differences in the reports from year to year. No evidence of intensified inspection procedures or increased candor in reporting is apparent. Indeed, audits performed both pre- and post–1989 state that the auditors were quite pleased with the candor and frankness of the plant's employees and managers. The evidence simply does not support Hercules' claim that the materials at issue are protected attorney-client communications. A different conclusion might be warranted if the NGB and APSB audits were begun solely at the request of Hercules' counsel for the purpose of advising Hercules. But this is not the case, and so the argument must fail.

One document, however, dated December 4, 1991 and entitled "Attorney Directed Kenvil Plant Inspection," does warrant a different conclusion. This document clearly was prepared in confidence for the purpose of obtaining legal advice regarding OSHA compliance. As such, it is privileged and should not be turned over. At any rate, the Secretary can obtain the substantial equivalent through the NGB and APSB reports, on-site inspections, and interviews with Hercules employees.

### Attorney Work–Product Doctrine

The attorney work-product doctrine protects from disclosure to an adversary the

work-product of an attorney prepared during or in anticipation of litigation. For materials to be eligible under this protection, it must be reasonably clear based on the surrounding facts and the nature of the materials that they were in fact prepared or obtained because of pending or anticipated litigation. *In re Grand Jury Proceedings,* 604 F.2d 798, 803 (3d Cir.1979).

As already discussed, Hercules has failed to show that the materials at issue here were prepared in a fashion other than the ordinary course of business. The claimant must demonstrate that "the communication would not have been made but for the client's need for legal advice or services." *First Chicago International v. United Exchange Co., Ltd.,* 125 F.R.D. 55, 57 (S.D.N.Y. 1989). A party may not shield facts from discovery merely by combining them with an attorney's core work product. *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir. 1984). Likewise, it follows that an audit regularly performed by a party does not become attorney work-product simply because the party's attorney directs that future audits be turned over to him for his use. One can only imagine the abuses of discovery which would result from such a rule. Again, a different conclusion might result if these audits were begun at the direction of Hercules' attorney. Again, though, that is not the case and, again, Hercules' argument must fail.

## CONCLUSION

For the reasons discussed above, it is the recommendation of the undersigned that the Secretary's petition be granted, with the exception of the December 4, 1991 document entitled "Attorney Directed Kenvil Plant Inspection."

Pursuant to Local Rule 40 D.5, the parties have ten (10) days from the receipt of this Report and Recommendation to file and serve objections to it.

Dated: April 5, 1994.